## NASH v. KRELING.

### S. F. No. 937; February 13, 1899.

#### 56 Pac. 260.

**Contract of Employment.**—One About to Enter the Employ of another demanded $100 per week for the term of two years. The employer offered him $75 a week for the first year, and $100 for the second. He declined, but agreed to contract for $90 a week for the first year, and, if business should not then warrant the $10 raise, he would wait until it did. This was accepted. Held, that this was a contract for one year only.[1]

**Contract of Employment.**—In an Action for Salary as Stage Manager of a theater, the court charged that if plaintiff agreed to devote his whole time to the theater, and to the duties of his employment, and to advise with defendant during business hours and when requested regarding the stage or business affairs, but failed and neglected any portion of his duties, he could not recover. Held, that the charge was not prejudicially erroneous, as allowing the original written contract to be varied by parol, as or implying, without evidence to support it, that his employment included other duties than that of stage manager; the evidence showing that his duties included the alleged additional promises, and the court having also charged that defendant employed plaintiff as stage manager, and could not require of him any formal contract differing from that shown by the original correspondence, nor to perform any duties not appertaining

[1] Cited and approved in Lynn v. Richardson, 151 Iowa, 290, 130 N. W. 1099, where a correspondence in respect of a dental business was held to constitute a contract for the sale of the business.

Cited in the note in 110 Am. St. Rep. 755, on contracts by telegraph and the admissibility of telegrams as evidence.

Cited in the note in Ann. Cas. 1912B, 130, on reference by contracting parties to future contract in writing as negativing existence of present contract.

to his employment, and that the employer was entitled to the employee's services during reasonable hours of his employment, and that the jury must determine plaintiff's duties as stage manager, and whether he had neglected them.

**Trial.—A Verdict on Conflicting Evidence** is conclusive.

APPEAL from Superior Court, City and County of San Francisco.

Action by John E. Nash against Ernestine Kreling. There was a judgment for defendant, and plaintiff appeals. Affirmed.

Naphtaly, Friedenrich & Ackerman for appellant; H. H. Lowenthal for respondent.

BRITT, C.—The trial of this case resulted in a verdict and judgment for defendant. Plaintiff avers that defendant employed him for a term of two years, beginning August 6, 1894, to be stage manager of a theater conducted by her, known as the "Tivoli Opera House," in the city of San Francisco, at a salary of $90 per week for the first year, and $100 per week for the second. On June 2, 1895, she discharged him from said employment; and he sues in this action for alleged damages sustained by reason of such discharge during twelve weeks, beginning July 1, 1895, amounting, at the alleged rate of salary for that period, to $1,150. The defense is that plaintiff was employed from week to week only, and also that he so neglected the duties of his employment as to justify his discharge, even if his contract was for the fixed period alleged by him.

To establish the terms of the contract, plaintiff produced in evidence a series of letters and telegrams which passed between himself, at various points in the eastern states, and defendant, in San Francisco. From these it appeared that their negotiation related at first to an employment of plaintiff as stage manager of said theater for two years, plaintiff's first demand being $100 a week for the entire term. At length defendant offered him $75 a week for the first year, and $100 a week for the second. Plaintiff replied declining the proposal, and added: "I will sign a contract for ninety dollars a week for the first year, and, if at the end of that time business should not warrant the ten-dollar raise, I would wait until it did"; to which defendant rejoined: "Your

terms, ninety dollars a week, accepted, . . . . which you can consider a contract until you get here, and then I will draw up proper one to suit." No other, however, was drawn up at any time. Plaintiff came to San Francisco, and entered upon said employment, and received, it seems, compensation at $90 per week from August 6, 1894, until he was discharged, as stated. The court instructed the jury that said letters and telegrams constituted a contract upon the part of defendant to pay plaintiff for one year, but no longer.

On the issue whether plaintiff habitually neglected the requirements of his position of stage manager, and so warranted the defendant in discharging him (Civ. Code, sec. 2000), it became necessary to prove what his duties were, and on this point the evidence was discordant. The testimony for plaintiff tended to show that the duties of his employment "were entirely behind the curtain." There was other evidence, however, tending to show that, besides supervising the immediate production of plays and operas, it was the duty of the stage manager at said theater to keep informed of new attractions of that character, and of disengaged actors and actresses who might be available for the house, and negotiate for both new pieces and new people, subject to the control of the general management, and otherwise to assist the management "both on and off the stage." There was also evidence that, when plaintiff arrived in San Francisco, he told defendant that he would "look out generally for the Tivoli, get new people and new plays, and devote all his time to the Tivoli," and consult with her about its affairs. Among the instructions given by the court to the jury was the following: "I charge you that if you find, from the evidence, the plaintiff agreed with Mrs. Kreling, upon his arrival in San Francisco, to devote his whole time and attention to the Tivoli, and to the duties of his employment, and he then promised and agreed with the defendant to advise and consult with her during business hours with regard to the stage affairs or business affairs of the Tivoli Opera House, and agreed to advise with her when requested to do so, in consideration of the receipt of ninety dollars per week, and if you are satisfied from the evidence that he habitually failed and neglected any part or portion of said duties, then plaintiff cannot recover in this action." The court also charged the jury, in substance, that defendant employed

plaintiff to be stage manager of her theater; that she was not entitled to require of him the execution of any formal contract differing from that shown by the letters and telegrams, nor to perform any duties not appertaining to his employment; that an employer is entitled to the time and services of the employee during the reasonable hours of his employment; and, further, with considerable iteration, that they (the jury) must determine from the evidence in the case what were plaintiff's duties in the capacity of stage manager, and whether he habitually neglected any of them.

1. Plaintiff complains of the instruction that the contract of employment evidenced by said letters and telegrams was for a term of one year only. As the jury found that plaintiff was not entitled to recover at all, not even for loss of the contract during the closing weeks of the first year, it is not apparent that he could have been injured by this instruction. But the view of the court was correct. Plaintiff's final proposal was for one year's service, at $90 per week, stating also a willingness to continue the employment at the same compensation until "business should warrant the ten dollars raise." This was a modification of his previous demand of $100 a week for a second year. But we do not find that plaintiff has anywhere alleged or claimed that defendant agreed to such modification. She accepted his terms of $90 a week for one year, but there was no agreement as to wages for another year, and hence no employment beyond the first year; for there is nothing in the correspondence between the parties to indicate that the defendant had in mind any period of service for which the rate of compensation was not fixed in advance.

2. The instruction which has been quoted above at length, relating to what plaintiff agreed to do, is strenuously attacked. Plaintiff contends that the instruction ignored the existence of a contract before his arrival in San Francisco; or, at least, that it allowed the terms of such prior contract, which was evidenced by writing, to be added to by parol, and that it implied, without evidence to support the assumption, that duties other than those of stage manager were included in his employment. The hypothetical statement in the instruction of duties which might be found to pertain to plaintiff's position did not, as modified by other parts of the charge, transcend the evidence which tended to attribute

those duties to such position, irrespective of any agreement he might have made after reaching San Francisco; that is to say, there was evidence that, to perform properly the duties of stage manager at the Tivoli Theater, plaintiff should have done those things, whether he specifically so promised when he came to San Francisco or not. The contract evidenced by the writings was, as the court held, a continuing one, good after plaintiff reached San Francisco, as well as before; and the continuance of its provisions is probably what the court meant by reference in the instruction to plaintiff's agreements upon his arrival, treating those agreements as particulars of plaintiff's existing obligations; and, in view of other instructions given, we do not think the jury could have understood that the contract created by the letters and telegrams was to be at' all disregarded, or that plaintiff was under obligation to serve defendant, except within the terms of that contract. They were told, in effect, that the written communications between the parties amounted to a contract, and that plaintiff was not required to sign any contract at all different therefrom, nor to perform any duties not included therein; also, that it was for them to determine from the evidence before them what constituted his duties as stage manager, and whether he neglected such duties. The reference in the instruction to the obligation of plaintiff to devote his whole time and attention to the Tivoli was qualified by the words following, "and to the duties of his employment," and by the charge elsewhere that "an employer is entitled to the time and services of an employee within all the reasonable hours of his employment." From the whole charge the jury can hardly have inferred, as supposed by plaintiff, that he was required to "be continually at the beck and call of the defendant."

In reviewing the charge to a jury, it must be held in mind that its different parts are to be considered in their mutual bearings, and as explanatory of each other, and that the jury is presumed to be capable of understanding the proper connection of the several parts, and their application to the facts. If, thus construed, the charge fairly and correctly states the law necessary for the guidance of the jury, the judgment founded on their verdict should not be reversed, because some portion of the charge does not in its detached form contain all necessary qualifications which are made suf-

ficiently prominent elsewhere. This is elementary doctrine: People v. Bagnell, 31 Cal. 400; Ellis v. Tone, 58 Cal. 290; Cousins v. Partridge, 79 Cal. 224, 21 Pac. 745; Davis v. Button, 78 Cal. 247, 18 Pac. 133, 20 Pac. 545. While, therefore, the instruction under criticism was carelessly drawn, and went to the verge of error, we feel satisfied that, upon the whole charge, the jury were not misled to plaintiff's prejudice.

3. The argument that the evidence of plaintiff's neglect of his duties was not sufficient to sustain the verdict does not much impress us. The evidence on this issue was at least conflicting, and the verdict is conclusive. The judgment and order denying a new trial should be affirmed.

We concur: Pringle, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order denying a new trial are affirmed.