# NASH v. KRELING.

## S. F. No. 1013; February 13, 1899.

### 56 Pac. 262.

**Contract of Employment.**—Defendant, in California, had been in communication with plaintiff, in Connecticut, looking to his engagement as stage manager. Plaintiff wrote, declining previous offers, but stated he would sign a contract for a certain sum for the first year, and, if at the end of that time business should not warrant a certain raise, he would not ask it. Defendant replied by telegram, "Your terms, $90 a week, accepted," and, in a letter, wrote that she had sent a telegram, which plaintiff could consider a contract until he arrived, when a proper one would be drawn up. Plaintiff became stage manager, and defendant suggested that a contract should be drawn up, but he stated it was unnecessary. Held, to create a contract between the parties.

APPEAL from Superior Court, San Luis Obispo County.

Action by John E. Nash against Ernestine Kreling. There was a judgment for plaintiff and defendant appeals. Affirmed.

H. H. Lowenthal for appellant; Naphtaly, Friedenrich & Ackerman for respondent.

BRITT, C.—This action is founded upon the same alleged breach of a contract of employment which is considered in the opinion rendered in the case of the same title (S. F. No. 937), 56 Pac. 260. In the present case, which was begun earlier than the other, plaintiff proceeded for the salary he would have earned under his contract, at $90 per week, during the four weeks next following his discharge, and ending June 30, 1895; and, contrary to the result in the other case, he obtained a verdict and judgment for the amount demanded. The defense was substantially the same in both actions.

On the trial of this case it appeared in evidence that sundry communications were sent between the parties—plaintiff at the east, defendant in San Francisco—looking to an engagement of plaintiff as stage manager of defendant's theater. Finally, in a letter dated at New Haven, Connecticut, May 11, 1894, plaintiff declined defendant's terms previously offered, and continued: "I will sign a contract for ninety dollars a week for the first year, and if at the end of that time business should not warrant the ten dollars raise, I would wait until it did." On May 18th defendant replied by wire: "Your terms, ninety dollars a week accepted. Letter follows." In the letter thus mentioned, she said: "Yours of the 11th received, and, in answer, sent telegram, which you can consider a contract until you get here, when I will draw up a proper one to suit." In reliance on these messages, plaintiff came to San Francisco, and became stage manager of defendant's theater, and received wages at the rate aforesaid, from August 6, 1894, to June 2, 1895. Defendant testified that she suggested to him about the time his salary began that a contract should be drawn and signed, but he said it was unnecessary; and so the matter rested. The court below ruled that the several letters and telegrams constituted a contract for the employment of plaintiff as stage manager at defendant's theater, for the period of one year, at a salary of $90 per week. Defendant urges that they were ineffectual to create any contract at all.

We differ with defendant. After endeavors to reach an agreement, which had continued by letter and telegram, for a month prior to May 18th, it is hardly credible that the par-

ties, or either of them, intended that plaintiff should come from the east to San Francisco to find that no agreement at all existed, or that what defendant declared to be a contract —by its terms wholly performable after plaintiff's arrival in San Francisco—should, upon his arrival, become a nullity. Rather, we hold, the circumstances considered, the remark in defendant's letter as to "drawing up one to suit" had reference merely to a more formal and detailed statement of the mutual obligations of the parties, and not to the rejection or suppression of what was already agreed in writing. Defendant relies on Spinney v. Downing, 108 Cal. 666, 41 Pac. 797. It may be true, as held in that case, that, when parties to a contract intend that it shall be reduced to writing and signed by them, it is not obligatory upon either until evidenced in the manner contemplated; but that is not saying that a contract already reduced to writing, and signed, is of no binding force merely because it contemplates a subsequent and more formal instrument, as the repository of the terms of the agreement. In a recent case, involving a contract, which, as here, rested in letters and telegrams, it was held (we quote from the headnote) that a "stipulation to reduce a valid written contract to some other form does not affect its validity, and the stipulation may not be used by either of the parties for the purpose of . . . . evading the performance of any of the provisions of the contract": Sanders v. Fruit Co., 144 N. Y. 209, 43 Am. St. Rep. 757, 29 L. R. A. 431, 39 N. E. 75. The doctrine is reasonable, and we have no doubt of its just application to the case before us: See, also, cases collected in 7 Am. & Eng. Ency. of Law, 2d ed., pp. 140, 141.

Defendant asserts that the evidence did not justify the verdict. The main question of fact was whether plaintiff neglected the duties of his employment. Upon this issue, as at the trial of the case determined in S. F. No. 937, (ante, p. 233, 56 Pac. 260), the evidence was conflicting; and, as the verdict there was conclusive of the question for defendant, so here it is conclusive against her. The order denying a new trial should be affirmed.

We concur: Pringle, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order denying a new trial is affirmed.