## WILLIAM WARD v. LUTHER BEECHER.

*Evidence—Attorney's correspondence—Terms of contract—Offer—Acts and conduct.*

1. An attorney's letter in reply to one addressed to his client *seems* to be admissible, if relevant, when it has been shown that he is attorney and has been put in possession of the letter to which his is an answer.

2. The real terms of a contract, if disputed, are properly left to a jury.

3. It is not an offer of property to say to another that whatever he takes is at his own peril.

4. Where the question before a jury is whether a person is a party to a transaction, and it has to be determined by his acts and conduct, such acts should be considered all together and not separately.

Error to Marquette. (Grant, J.)    April 30.—May 6.

ASSUMPSIT. Defendant brings error. Affirmed.

*F. O. Clark* for appellant.

*E. J. Mapes* and *Ball & Hanscom* for appellee.

CAMPBELL, J. Ward sued Beecher for non-fulfillment of a contract whereby, as claimed, he was either to restore to Ward certain mining machinery, then in controversy in the United States court at Marquette, or to pay such judgment as should be rendered against Ward therein. The case arose out of these circumstances :

In January, 1879, plaintiff became absolute owner by execution title of certain property known as the " Rolling-mill Mine," in Marquette county, and went into possession and worked it until May, 1881, when the property was bid off on a previous mortgage. At this time plaintiff held also a tax title. Plaintiff had gone into possession under his purchase, of a large lot of mining machinery, which was claimed by one Bale to belong to himself by prior title. This was in litigation in an action of trover in the United States circuit court.

At the foreclosure the property was bid off in the name of George W. Cobb, but, as plaintiff claims, in fact for defendant Beecher to whom the title was afterwards conveyed. At this time, in order to get possession and obtain all of plaintiff's interests, an agreement was made to pay him $4000 cash, and, in addition to this, to make plaintiff good in regard to the disputed machinery by either paying such judgment as Bale should obtain, or by letting plaintiff have such property as was involved in that litigation. There is some dispute as to the precise terms of this agreement, which was, we think, fairly left to the jury to determine. The chief controversy is whether this was an agreement binding Beecher, or whether it was Cobb's and not Beecher's.

The other important questions hinge upon the precise character of the agreement and its breach. Bale obtained a judgment against plaintiff for $2800 damages and $109 costs. After this plaintiff claims to have called on Beecher to perform the agreement. Beecher claims he offered to plaintiff the part of the machinery which the judge of the United States court regarded as not belonging with the realty. Plaintiff disputes the correctness of that construction of the contract, which he claims covered all that was disputed in the Bale suit. He also claims that Beecher never tendered either all or any part of the property in any such way as to put himself in position to be discharged.

The questions presented by the assignments were grouped on the argument, and can be dealt with more concisely here by the same process.

We think there was very full testimony tending to show

that the contract sued on was Beecher's. Upon that question there was a direct conflict. It was therefore for the jury to determine, and we find nothing in the instructions given them which is open to criticism on that question. The positive and circumstantial evidence was all fairly open to consideration, and their conclusions were warranted by it, and we have nothing to do with their conclusions, which seem to have satisfied the trial judge.

A point was made, although not much relied on, that it was improper to receive a letter signed by Mr. Whittemore, Beecher's counsel, as in any way binding Beecher. Plaintiff wrote a letter to Beecher personally, August 5, 1882, after the Bale suit had been once decided, urging his attention to the matter, and making various statements. To this letter an answer was at once written by Mr. Whittemore, referring to it, and purporting to be in reply, and to express Mr. Beecher's views. We think the previous testimony concerning Whittemore's relations, and the fact that he had been put in possession of the letter from plaintiff, rendered this reply admissible. It was certainly relevant, and that is the only point made.

The terms of the contract were testified to by a part of the witnesses as contained in an unsigned memorandum embodying the precise words agreed on. There was also testimony to the contrary varying those terms. That memorandum provided that if Bale recovered judgment, Cobb (who, by the verdict, is found to represent defendant) was to pay the judgment, " or allow Ward to take the machinery in question in the suit." There was some dispute whether the real agreement was confined to the property determined to belong to Bale, or the property which he actually claimed. All of this was properly left to the jury.

We think the court did not err in holding that if this memorandum contained the precise contract made, it referred to whatever was in issue in the lawsuit. And it appeared on the trial that there was a great dispute on the extent of that property,—Bale at one trial obtaining a verdict for about $6000, while, on the last trial, the judge so instructed the

jury as to greatly reduce it.    There was nothing in the dec-
laration to indicate that any part of the property described
was not capable of severance from the mine.    There is au-
thority for holding that such articles may be either fixtures
or chattels under different circumstances.    The verdict of
the jury in the trover suit contained no description of the
property which was held to have been converted, and all the
proof that the issue was narrowed, was parol evidence con-
cerning the judge's charge.    There was nothing, therefore,
which could be regarded as beyond the power of parties to
agree upon; and as defendant had his option to pay the judg-
ment or surrender the property, he could not be damnified by
the stipulation, which was evidently intended to leave plaint-
iff his consideration price of $4000 clear of any loss by reason
of questions concerning the title of any of the property at the
mine, while defendant could always protect himself by pay-
ing the judgment, if he preferred that to giving up the prop-
erty.

If, as defendant claimed, the bargain was limited by the
property found by the jury, and not the property in dispute,
all of the various matters were during the trial fairly submit-
ted, and we do not think that the claim that they were not,
is borne out by the record.    We have no means of knowing
what precise view the jury took of all this, because there was
evidence before them, although disputed, that defendant
never made any unconditional offer to give up anything, or to
let plaintiff take anything.    If, as was testified by some of
the witnesses, he told plaintiff that whatever he took was at
his own peril, it cannot be treated as an offer of any kind;
and if not, he was bound to pay the judgment.

This includes all the questions which appear to us to be
fairly raised by the record.    Some criticism is made concern-
ing the admission of conduct and acts of the various parties
acting in defendant's interest as irrelevant and misleading,
and concerning some alleged confusion in the charge.    Noth-
ing is pointed out which strikes us in that way.    Mr. Beecher,
Mr. Whittemore, and Mr. Cobb appear in various parts of
these transactions, acting under different names, and, as now

claimed, in different interests. It was quite proper to allow all of these things to be considered together to enable the jury to satisfy themselves how far defendant was the real party throughout. Isolated facts cannot be picked out of a series of transactions and interpreted by themselves. If the whole series led the jury, as it seems to have done, to conclude that Mr. Beecher was the contracting party, and as such in default, they were legally justified in so doing, and the judge below was right in allowing it, and in turning their attention to all that was before them.

The judgment should be affirmed.

The other Justices concurred.