BAILEY v. SIBLEY QUARRY CO.

1. MASTER AND SERVANT—SALARY—TERM OF CONTRACT.

In an action for damages for breach of a contract of employment, testimony of the employé that he was hired by the year at a salary of a thousand dollars, that no times of payment were specified, that he afterwards received payment twice a month, tended to support his claim that the employer committed a breach of the contract by discharging plaintiff after the beginning of the sixth year.

2. SAME—WITNESSES.

> Plaintiff was not bound by the testimony of the agent who hired him, although plaintiff called the agent as his own witness.

3. SAME—WAIVER OF BREACH.

> The court properly submitted to the jury the conflicting evidence that plaintiff consented to a termination of his employment.

Error to Wayne; Hosmer, J. Submitted February 1, 1912. (Docket No. 139.) Decided March 12, 1912.

Assumpsit by James Bailey against the Sibley Quarry Company for breach of a contract of employment. Judgment for plaintiff. Defendant brings error. Affirmed.

*C. K. Latham*, for appellant.

*James H. Pound*, for appellee.

BLAIR, J. Plaintiff brought this action to recover a balance of salary alleged to be due under a contract of hiring by the year, which contract, he alleged, was wrongfully terminated by defendant before the end of a yearly period. The defendant contended that plaintiff was not employed for any fixed period, but subject to discharge at pleasure, and that he consented to the termination of the contract. The circuit judge submitted the case to the jury upon the two issues presented by defendant, and the jury found a verdict in favor of plaintiff.

Defendant insists in this court that there was no evidence to sustain the plaintiff's claim of a hiring by the year, but that, on the contrary, his own testimony shows an indefinite hiring, and the court erred in submitting the question to the jury.

It is agreed that plaintiff entered the employ of defendant January 1, 1903, and continued therein until May 1, 1909. Plaintiff testified, as to the terms of his employment, that he was employed by Mr. Sundstrum, general manager and treasurer of the defendant:

"He offered me a thousand dollars a year, including house rent, heat, and light (that is, for a year); that is all there was at that time.

"*Q.* And at that time did he say anything else as to the future?

"*A.* Why, he mentioned the fact that, excepting that, there was to be $1,000 the first year, with a promise of an increase after that. * * * I received pay twice a month, the 15th and the last; that was the custom to pay half monthly. My service was terminated on the 30th day of April, 1909. * * * The bargain between me and the defendant company was finally made between me and Mr. Sundstrum. * * * When I made this bargain, I was in the Michigan Central Railway depot. He made the first proposition. He said that if I would take the position the salary would be a thousand dollars a year, and I would have heat, light, and fuel, and in case the store would close, would change hands, that the company would see that I did not lose anything by giving up my position; that is practically the language he used. Rent could also be included in that.

"*Q.* Did he say anything to you about how often you would be paid?

"*A.* No. He said nothing to me about how often I would be paid; we started out to pay every two weeks from the first, practically the same as the Quarry Company was paying their men, every two weeks. It was a custom of defendant to pay all its men every two weeks.

"*Q.* Wasn't that what he said; that you would be paid semi-monthly at the rate of a thousand dollars for the first year?

"*A.* He said I was to get paid at the rate of $1,000 a year.

"*Q.* Yes; at the rate of $1,000 a year?

"*A.* $1,000 a year.

"*Q.* And there was not, so far as time was mentioned, there was no other mention of time, was there, in that bargain?

"*A.* I was hired by the year at $1,000.

"*Q.* Didn't he say that he would give you at the rate of $1,000 a year for the first year?

"*A.* He said I would receive $1,000 a year.

"*Q.* Then, did he say anything about a year—but simply that he would pay at the rate of $1,000 a year?

"*A.* No, sir.

"*Q.* I want to get at the exact words.

"*A.* No, sir.

"*Q.* Did he say this: We will pay you at the rate of $1,000 a year?

"*A.* No, sir.

"*Q.* Give his exact words, if you can.

"*A.* I said, we would—my salary was to be $1,000 a year.

"*Q.* Well, and was there any number of years mentioned?

"*A.* No, sir.

"*Q.* And one year was not mentioned even, as it?

"*A.* No, sir.

"*Q.* Nor two years?

"*A.* No, sir.

"*Q.* Nor five years, nor six years, nor 100 years?

"*A.* No, sir.

"*Q.* No years was mentioned at all?

"*A.* None whatever.

"*Q.* He simply said he would give you $1,000 a year?

"*A.* $1,000 a year.

"*Q.* Didn't he say at the rate of $1,000 a year?

"*A.* No, sir.

"*Q.* And he said—and he did not state it to be semimonthly payments?

"*A.* No, sir."

Mr. Sundstrum testified:

"I said to Mr. Bailey that I came over to ask him if he would accept a position with the condition of a payment at the rate of—the payment of salary at the rate of $1,000 a year and free room and free light. * * * Mr. Bailey said at the beginning he did not know; he had a good place at Sibley as railroad station agent, and that he did not know just at that moment—if the company for some reason or other shut down the store in the near future, he would be without occupation. I replied that if the store was shut down in the near future we would see about it that he would be taken care of in some way. * * *

"*Q.* Did you employ him for any definite time whatever?

"*A.* I never employed Mr. Bailey for any definite time."

Although Mr. Sundstrum was called by plaintiff, his

testimony, if inconsistent with plaintiff's, did not conclude him, and we think plaintiff's own testimony, considered as a whole, fairly supports his claim of a hiring by the year.

There was a sharp conflict of testimony on the question whether plaintiff consented to the termination of his contract, which required its submission to the jury. The other points presented in the appellant's brief do not, in our opinion, require discussion.

The case was properly submitted to the jury, and the judgment is affirmed.

MOORE, C. J., and STEERE, BROOKE, and STONE, JJ., concurred.