REYNICK *v.* ALLINGTON & CURTIS MANUFACTURING CO.

1. APPEAL AND ERROR—NEW TRIAL—EXCEPTIONS—NECESSITY.
  Exceptions are requisite to the review, on error, of the refusal of the trial court to grant a motion for new trial, as well as to the refusal to direct a verdict.

2. CORPORATIONS—EVIDENCE—RECORD OF PROCEEDINGS.
  It is competent to show by parol any action of the board of directors of a corporation which has not been properly entered of record in its minutes.

3. MASTER AND SERVANT—HIRING—TERM.
  *Held,* that plaintiff's evidence sufficiently tended to establish the disputed fact that defendant's directors had assented to his employment by the year.

4. FRAUDS, STATUTE OF—CONTRACTS.
  Having made a contract to enter the employ of defendant for a year, and after performing services for that period, and continuing over without objection, plaintiff was entitled to go to the jury under a presumption that both parties consented to the continuance of the contract for another year; the contract was not within the statute of frauds.

5. CORPORATIONS—OFFICERS—GOOD FAITH.
  Officers of a corporation may deal with it in good faith if their acts are fair, open, and known to directors and stockholders.

Error to Saginaw; Gage, J.  Submitted January 21, 1914.  (Docket No. 104.)  Decided March 27, 1914.

Assumpsit by Charles J. Reynick against the Allington & Curtis Manufacturing Company for breach of a contract of employment.  Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Humphrey, Grant & Humphrey,* for appellant.

*Weadock & Weadock,* for appellee.

MOORE, J.  Plaintiff commenced work for defendants in 1900, and worked continuously to March 1, 1908.  In December, 1908, and in the same month in 1909, he worked some by the day in the preparation of statements and the annual accounts.  He was a stockholder, and one of five directors in the company.  In the records of a meeting of the board of directors held December 30, 1909, appears the following:

"Board decided to employ Mr. C. J. Reynick, commencing January 1st, 1910, at a salary of $200 per month."

Mr. Reynick commenced work January 1, 1910, and continued to work until in 1912.  The minutes of a meeting of the board of directors held May 23, 1912, read in part as follows:

"Present:  Messrs. W. H. Gilbert, H. T. Wickes, W. E. Allington, C. J. Reynick, R. M. Boyd.
"The minutes of the last meeting were not read, as the secretary did not have a copy of them, owing to the fact that it was a special meeting held at the East Saginaw Club, at which there were present Messrs. W. H. Gilbert, H. T. Wickes and W. E. Allington. These gentlemen confirmed the action of the board

at this meeting, at which time Mr. C. J. Reynick was asked to hand in his resignation effective June 1, 1912.

"There was a general discussion, and Mr. Reynick asked that the action of the board be confirmed at this meeting, which it was unanimously.

"Mr. Reynick demanded that his salary be paid until January 1, 1913. This matter was to be referred to the attorney of the company, and action to be taken at a later date."

Mr. Reynick, claiming that he was employed by the year, and that his discharge was unlawful, brought this suit to recover damages. At the close of the testimony defendant requested a verdict in its favor, which request was denied, and the case was submitted to the jury, which returned a verdict for the plaintiff. A motion was made for a new trial, which motion was overruled. From a judgment rendered in favor of the plaintiff the case is brought here by writ of error.

Upon the oral argument counsel for appellant abandoned all assignments of error based upon the denial of a motion for a new trial because no exceptions were taken. See *Hotchkiss* v. *Weinmann-Matthews Co.*, 175 Mich. 652 (141 N. W. 568), and cases there cited.

Counsel for appellee insist this court should not consider the assignments of error relating to the refusal of the court to direct a verdict because no exceptions were taken. A reference to the record shows no exceptions were taken, and the contention of counsel for appellee must be sustained under *Bills* v. *A. W. Stevens & Co.*, 146 Mich. 515 (109 N. W. 1059), and *Priebisch* v. *Ottenwess*, 176 Mich. 476 (142 N. W. 762).

The following assignments of error raise the important questions in the case:

(1) The refusal of the court to charge as follows:

"I charge you that it appears from the record of the proceedings of the board of directors of the Allington & Curtis Manufacturing Company, of which the plaintiff was a member, that the plaintiff's em-

ployment and the terms thereof was made by action
of the board of directors of the company; and I charge
you that no change or modification of the original
contract of employment from a hiring by the month
could be made by any director or officer of the com-
pany, except by action of the board of directors
authorizing such change in a regularly called and held
meeting, and that the plaintiff is not entitled to re-
cover in this action, and your verdict must be for the
defendant."

(2) The charge as given:

"If this talk was outside, and it did not occur in
the board meeting, which as I recollect is testified to
by all of the directors, why, then it would not be bind-
ing on the company, in view of what Mr. Reynick
knew about the by-laws of this company. If he had
not known anything about that, they would not pro-
tect themselves by the by-laws. He was a director of
the company, knew and understood that those by-laws
were such that the employment should be made by the
board of directors. But notwithstanding a contract
made by a corporation is invalid, or an agreement
made by a corporation, or by the directors of a cor-
poration, is invalid at the time when it is made, still
the corporation officers can ratify that, and the con-
tract therein."

Counsel say in the original brief:

"There are but few questions presented in this case
to this court for review. The primary question at the
outset is as to whether the plaintiff in this case was
ever employed by the defendant company by the year.
It is beyond all dispute that his employment, at the
time when he started to work, was an employment by
the board of directors of the company, acting under
their by-laws, and was by the month, or from month
to month, and not by the year. * * * Was this
employment from month to month changed to an em-
ployment from year to year?"

To this query they answer no. It is also contended
that the arrangement plaintiff claims was made in
March, 1911, for an increase of his salary was simply

a continuation of the hiring by the month, and that in any event the contract would lapse by its own limitations with the year 1911.

In the reply brief it is claimed (we now quote from the supplemental brief) :

"We insist that the question before this court is one of law as to whether or not there is any evidence in this case showing or tending to show a definite hiring by the year. We have not quoted the evidence in this brief for the purpose of having this court pass upon the weight of the evidence. This quotation is simply for the purpose of showing that there is no evidence in the case tending to show that the minds of the parties met upon any agreement for a definite time or period of plaintiff's employment. We submit there is no such evidence, and the lower court should have so held, and we ask this court to hold that the defendant had a perfect right to discharge the plaintiff from its employment, and that plaintiff had a perfect right to quit the employment at any time when he saw fit. We shall not repeat our argument with regard to the new contract made in March, 1911, which we claim absolutely abrogated and terminated all agreements preceding that date, and that in such employment in March, 1911, the term of employment was made definite, that is, from April 1, 1911, to December 31, 1911, and the compensation fixed at $250 per month."

In view of these contentions it will be necessary to state more in detail the claim of the plaintiff. When Mr. Reynick entered upon his employment in January, 1910, he was the general agent of the Equitable Life Assurance Company, and it is his claim that he was not willing to enter into this employment unless he could be assured of work for at least a year, and that he called the attention of the board of directors at their first meeting in January to that fact. His claim is that such action was taken as resulted in his employment being by the year. He testified in part as follows :

"The date is January 10, 1910. On that day I had

a conversation with some of the gentlemen representing the Allington & Curtis Manufacturing Company with reference to employment.   *   *   *

"*Q*. With whom was the conversation had?

"*A*. Why, the conversation was had at the directors' meeting, held directly after the annual meeting, and the four directors, other directors, and myself were present.   *   *   *

"*Q*. State what that conversation was, and with whom it was?

"*A*. Well, after the election of officers by the board of directors—first the election was over, and in accordance with my talk with Mr. Allington, I stated that I was unwilling to accept employment with the company for a term of less than one year. That was said to the four gentlemen who were present, Mr. Gilbert, Mr. Allington, Mr. Boyd, and Mr. Wickes. I said I couldn't for a shorter period afford to give up the business in which I was engaged. I don't know whether I mentioned then about what that business was or not, but I guess they knew.

"*Q*. Then what did they say in answer to your statement that you couldn't accept employment for less than a year?

"*A*. Well, I can't give their exact words, but Mr. Wickes stated, in effect, that they wouldn't expect anything different. Mr. Allington said, of course, that was understood, and I can't recollect that Mr. Gilbert or Mr. Boyd said anything."

On cross-examination:

"*Q*. Now, that is the time you say that you said something about the length of time of your employment, was it?

"*A*. It is.

"*Q*. At that time, Mr. Reynick, wasn't it after the board adjourned?

"*A*. It was not. The whole board was present when I had my talk. I talked to the whole board with regard to it—that is, the balance of the board—addressed the meeting, board of directors.

"*Q*. Well, was any resolution or motion offered or adopted or passed in any way?

"*A*. No, sir; not that I know of.   *   *   *

"*Q.* Yes. What did you say about the length of time of your employment?

"*A.* I said that I wouldn't take up that work for a less period than a year. * * *

"*Q.* Was there anything said at that time about that it was understood you would stay as long as it was satisfactory to the board?

"*A.* There was not; that wasn't mentioned.

"*Q.* Was there anything said by you to this effect: 'I don't want to come here and stay a short time, and then to be turned out?' Was that said?

"*A.* I think so.

"*Q.* Did you mention the time, a year, or any length of time, in any way?

"*A.* I did."

On redirect examination he testified as follows:

" * * * *Q.* Mr. Reynick, in giving your testimony yesterday as to the conversation, you said that you could not afford for a shorter period to give up the business in which you were then engaged. What period was meant?

"*A.* One year.

"*Q.* You may state whether or not that conversation with those gentlemen—what was the tone of your conversation as to whether or not it was heard and understood by all of them? State whether or not the conversation of January 10, 1910, between yourself, Mr. Gilbert, Mr. Wickes, Mr. Boyd, and Mr. Allington was in a tone or conversation that could be heard by the men present.

"*A.* I should say it was.

"*Q.* You may state whether or not you heard any dissent.

"*A.* There was not. * * *

"*Q.* What, if anything, did you say to those gentlemen at that time, on January 10, 1910, as to whether or not you would discontinue your services, if the period was or was not fixed at one year, and what did you say on that subject? * * *

"*A.* I stated I couldn't accept this employment for less than one year. I so stated that before."

The other directors give a different version of what occurred.

Vice President and General Manager Allington testified in part as follows:

"*Q.* Now, when, if ever, did Mr. Reynick say anything to the members of the board respecting his employment?

"*A.* After the meeting adjourned and they were standing around, the question was raised about his employment. Mr. Reynick raised it. And he was talking to the gentlemen standing around there, all except Mr. Wickes. He said that he didn't want the employment for a short period, or just to fix up our books and then have the term ended, because he wouldn't want the position under those circumstances. And it was stated that that wasn't the intention; that we wanted him to run the office and remain in the employment of the company as long as it was satisfactory, and we hoped that that would be a long time."

On cross-examination he testified in part as follows:

"*Q.* That conversation was substantially this, wasn't it, Mr. Allington: Mr. Reynick said to you that he could not continue in that employment for $200 a month; he said that, didn't he?

"*A.* Except under certain conditions.

"*Q.* He said to you at that time he couldn't continue in the work for the company at $200 a month?

"*A.* No, not just that way he didn't; he stated unless certain things were complied with he couldn't.

"*Q.* What he said to you was he couldn't remain at $200 a month for a short period?

"*A.* That is right. I am referring to the meeting in January, 1910. * * * The conversation of January 10, 1910, the substance of the talk, was he said he wouldn't stay for a short period for the $200; it must be a longer period than a month.

"*Q.* You said it wouldn't be by the month; it would be continuous?

"*A.* You mean a longer period than a year?

"*Q.* Yes, you claim when you first employed him, December 30th, it was then for $200 a month?

"*A.* Yes.

"*Q.* In that conversation he said he wouldn't remain by the month at $200, remain for a short period?

"*A.* That is right.

"*Q.* In answer to that you said to him you didn't contemplate it to be a short period of employment, but to be substantially continuous?

"*A.* Yes; as long as satisfactory.

"*Q.* Whatever that conversation was, it was disposed of, and you all went about your business?

"*A.* Yes, sir.

"*Q.* Now, you were then acting manager of the plant, weren't you, of the business?

"*A.* Yes, sir, and I continued to act as manager from that time down to the present time. * * *

"*Q.* Going back to the year 1910, January, and you then expected that Mr. Reynick's employment would then continue from year to year?

"*A.* I hoped for many years."

President Willis H. Gilbert testified in part as follows:

"At that meeting of the board of directors, and while the board was in session, I did not hear Mr. Reynick make any claim in regard to the length of his employment by the company. I did hear talk by Mr. Reynick that day on that subject. It was after the meeting of the board, after it had been adjourned.

"*Q.* Now what did Mr. Reynick say, as you remember the conversation?

"*A.* Well, he was quite anxious to know that his employment was not to be what might be termed 'temporary,' if he would go on. At that time in what he stated he did not use the word 'year' or 'employment by the year' in any way."

On cross-examination he testified in part as follows, viz.:

"*Q.* All you mean to say is that you recollect no such conversation at that time; you didn't hear any such conversation at that time; that is what you mean to tell us?

"*A.* There was something said there at the office of the company in regard to his doing—

"*Q.* Now, tell us what that was?

"*A.* Mr. Reynick said he didn't want to go in there without some assurance of its being permanent.   *   *   *

"*Q.* State just what was said at that conversation you speak of in the office?

"*A.* He said he didn't want to come in there and straighten out our books and then be let out, which might require a couple of months.

"*Q.* What reply was made to him?

"*A.* The reply was made that that was not our intentions.

"*Q.* Who made that reply?

"*A.* I think we all acquiesced in it.

"*Q.* And who was present at that time?

"*A.* Mr. Allington and myself, possibly Mr. Boyd.

"*Q.* Now that is the best recollection of all that took place at that time?

"*A.* Yes, sir."

R. M. Boyd, secretary of the company, testified in part as follows, viz.:

"I was present at this meeting of January 10, 1910, shortly after Mr. Reynick's employment, and acted as secretary of that meeting.   *   *   *

"*Q.* At that meeting do you remember, or at any time that day do you remember, Mr. Reynick stating anything with regard to the length of time of his employment?

"*A.* Yes, sir; that was after the adjournment. He stated that he didn't care to accept the position for a short period, as I remember, of two or three months.

"*Q.* And do you remember anybody making any reply to that?

"*A.* Yes, I think that both Mr. Allington and Mr. Gilbert made the statement that that was not the intention; it was the intention to retain him as long as his services were satisfactory. That was practically the substance of the conversation."

On cross-examination he testified as follows:

"*Q.* And you understood him at that time he could not afford to take an employment that was short, didn't you?

"*A*. Yes.

"*Q*. And you heard Mr. Gilbert, the man that has just been on the stand, president of the company, and Mr. Allington, vice president, assure him they did not contemplate that he should take a short employment?

"*A*. Yes.

"*Q*. Your memory is, instead of being fixed at a year, as Mr. Reynick states, that the employment was to be as long as satisfactory?

"*A*. Yes."

It is the recollection of all the directors that when this matter was discussed, Mr. Wickes had put on his overcoat, and was not present, but it does appear from Mr. Allington's testimony that Mr. Reynick was talking to all of the directors except Mr. Wickes, and that whatever arrangement was made, it had the sanction of all who were present. Mr. Gilbert testified: "I think we all acquiesced in it." Mr. Boyd's testimony in that regard is to the same effect. We have a situation, then, where within 10 or 11 days after the resolution of December 30, 1909, and when he had been at work but a few days, the plaintiff was saying in effect to the board of directors that he was not willing to work under the resolution; that he must be assured, he says, of a hiring for the year; they say of more than a temporary hiring, and that they assured him he should stay as long as his work was satisfactory. It also appears that, as the result of the action (whatever it was) which was taken, plaintiff, instead of quitting work, as he said he would, if action was not taken, continued on for a long period of time.

This case is a striking illustration of the desirability of corporate action being at once recorded in the minutes of a corporation, instead of being left to the recollection of interested parties, however honorable those parties may be.

It is clear that the subject brought to the attention of the board by Mr. Reynick was acted upon. It is

not clear what that action was. Some correspondence, which will be referred to later, may have a bearing upon what the parties understood as to the effect of the action taken. The result of that action, whatever the action was, is not defeated by a failure to enter it upon the records of the meeting. *Township of Taymouth* v. *Koehler*, 35 Mich. 22; *Ismon* v. *Loder*, 135 Mich. 345 (97 N. W. 769) ; *Wheat* v. *Van Tine*, 149 Mich. 314 (112 N. W. 933). The question was a controverted one, which was submitted to the jury under proper instructions, and the jury found in favor of the plaintiff.

We now come to the effect of what was done in March, 1911, which resulted in the plaintiff receiving $250 a month instead of $200. We have already stated, by quoting from the brief of counsel, the claim of appellant in this regard. It is the claim of the plaintiff that when he was hired he was allowed to continue his insurance business, but that the increasing demands made upon him by the defendant made it impossible for him to give the insurance business the attention it was expected he would be able to give it, and that in view of this situation an increase in salary was discussed between him and the general manager, Mr. Allington, who in turn conferred with his fellow directors; that Mr. Allington told him he had authority to pay him $250 a month for the balance of the year, and then the matter would be taken up further. His claim is that the new arrangement applied simply to the increase in pay, and did not affect the time for which he was employed. He further claims there was discussion about his being allowed $300 a month after 1911. It is clear there was such a discussion, because the president of the company sent to him the following letter, dated the next day after the annual meeting:

"CHICAGO, ILL., Jan. 9th, 1912.
"MR. C. J. REYNICK,
        "Saginaw, Mich.
*"Dear Sir:*
    "Mr. Wickes, Mr. Boyd and myself took up the matter of your salary last evening. We do not feel that under the present state of business and earnings of the company that the company should pay the salary that you ask for.

    "Our overhead expense is already quite large as you know and our earnings on the amount of business we do small.

    "We have decided to make you the following proposition:

    "If the profits of the company for the year 1912 amount to $25,000 or more net to the stockholders then we would be willing to pay $300 per month for year ending Dec. November 30th, 1912, for your services, if the profits are less than $25,000, we think the present salary is all that the company can afford to pay.

    "Will you kindly advise me if this proposition is satisfactory to you.

                    "Yours very truly,
                            "W. H. GILBERT."

    To this letter plaintiff replied (written on Allington & Curtis Manufacturing Company stationery):

                    "SAGINAW, MICH., Feb. 7, 1912.
"W. H. GILBERT,
        "Chicago, Ill.
*"My Dear Mr. Gilbert:*
    "Your letter of Jan. 9th relative to salary was received some time since, and I have not replied earlier as I wished to see Mr. Wickes before doing so. He is such a busy man that I was unable to meet him until very recently.

    "He advises me that he had only a brief talk with you over the telephone, and assented without knowledge of all the circumstances to a decision which he supposed you and Mr. Boyd had already reached. With his present knowledge of the situation, I believe he thinks the matter is entitled to further consideration, which I hope it may receive in the near future.

"The proposition contingent · on net earnings of
$25,000 does not appeal to me.
"Very truly yours,
"C. J. REYNICK.
"C. C. to H. T. WICKES."

It is important to note the date of this letter. It
was after plaintiff had entered upon his work in Janu-
ary, 1912. If the hiring was from month to month,
or after April 1, 1911, was for a period which would
lapse by limitation, with the end of the year 1911,
as claimed by defendant, why was the president of
the company on January 9, 1912, making an offer to
the plaintiff:

"If the profits of the company for the year 1912
amount to $25,000 or more net to the stockholders
then we would be willing to pay $300 per month for
year ending Dec. November . 30th, 1912, for your
services, if the profits are less than $25,000, we think
the present salary is all that the company can afford
to pay."

If the situation was as claimed by defendant, why
was it necessary, at the meeting of the board of di-
rectors, held May 23, 1912, referring to the meeting
held May 1, 1912, to enter upon the minutes the fol-
lowing:

"These gentlemen confirmed the action of the board
at this meeting, at which time Mr. C. J. Reynick was
asked to hand in his resignation, effective June 1,
1912."

We think it clear the question of the character of
the hiring could not be decided as a matter of law.

As to the effect of entering upon another year's
work, we think what was said in *Sines* v. *Superin-
tendents of the Poor*, 58 Mich. 503 (25 N. W. 485),
is germane:

"It is urged by defendants that the contract claimed
by the plaintiff is void by reason of the statute of
frauds; that the talk with the president in September,

to continue work until he had laid the matter before the board, was a contract not to be performed within a year. But this is an erroneous view. of the testimony. The contract had been previously made for a year's service, and under that contract defendant had gone on from year to year; and in such cases, if nothing is said or done by either party at the end of the year to terminate it, but on the contrary, the person performing service is allowed to continue on without objection, the facts raise the presumption from which the jury have found that both parties have assented to the contract continuing in force for another year. *Tatterson* v. *Manufacturing Co.*, 106 Mass. 56. The case of *Tallon* v. *Mining Co.*, 55 Mich. 147 [20 N. W. 878], as was said by us when the case was here on a former occasion, rules this case upon the point under consideration."

See, also, *Laughlin* v. *School District*, 98 Mich. 523 (57 N. W. 571) ; *Chamberlain* v. *Stove Works*, 103 Mich. 124 (61 N. W. 532) ; *Graves* v. *Lyon Bros. & Co.*, 110 Mich. 670 (68 N. W. 985) ; *Wright* v. *Iron Co.*, 129 Mich. 543 (89 N. W. 335).

We again quote from the brief of counsel:

"It is also the claim of defendant's counsel that Mr. Reynick, as a member of the board of directors of the defendant company, was acting in a fiduciary capacity as a member of said board, and that he had no right as such director, after an attempt to obtain a salary for himself in excess of what his services were reasonably worth, to try to force defendant company to pay him the compensation he had requested."

We do not think there is any testimony upon which to base this contention. The record is clear that defendant's offer was at the beginning $200 a month, and, when the increase was made to $250, there is nothing to indicate any want of good faith on the part of any one.

In *Barnes* v. *Spencer & Barnes Co.*, 162 Mich. 509 (127 N. W. 752, 139 Am. St. Rep. 587), it is said:

"It is not the law that an officer of a corporation

cannot deal with the corporation if his acts are open and fair and known to the directors and stockholders. See 10 Cyc. p. 794; *Ft. Payne Rolling Mill* v. *Hill*, 174 Mass. 224 (54 N. E. 532); *Africa* v. *News-Tribune Co.*, 82 Minn. 283 (84 N. W. 1019, 83 Am. St. Rep. 424); 2 Cook on Corporations (6th Ed.), § 652; *U. S. Steel Corp.* v. *Hodge*, 64 N. J. Eq. 807 (54 Atl. 1 [60 L. R. A. 742]); *Ten Eyck* v. *Railroad Co.*, 74 Mich. 226 (41 N. W. 905, 3 L. R. A. 378, 16 Am. St. Rep. 633); *Henry* v. *Benevolent Ass'n*, 147 Mich. 142 (110 N. W. 523)."

The instant case was tried by able counsel, and was intelligently and carefully submitted by the trial judge to the jury.

Judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.