McINTYRE *v.* SMITH-BRIDGMAN & CO.

1. MASTER AND SERVANT—ORAL CONTRACTS—TERMS—RENEWAL—EVIDENCE.

In action by former manager of household appliance department of defendant's store for balance of year's salary and commissions less amount earned during such period, testimony *held*, to present for consideration by jury questions of fact as to the terms of the oral contract between the parties and as to the renewal thereof from year to year.

2. SAME—ANNUAL CONTRACTS—RENEWAL—PRESUMPTIONS.

After the termination of a contract for service for a year where the relationship is permitted to continue with nothing said or done by the parties, the facts may raise a presumption from which a jury may find that both parties have assented to the contract continuing in force for another year.

3. FRAUDS, STATUTE OF—CONTRACT OF EMPLOYMENT—DURATION OF PERFORMANCE.

Under evidence clearly showing that performance pursuant to oral contract of employment was to be within one year, the contract would not be void under pertinent provision of statute of frauds (3 Comp. Laws 1929, § 13417).

4. MASTER AND SERVANT—DISCHARGE—DAMAGES—QUESTIONS FOR JURY.

In assumpsit for balance of year's salary and commissions less amount earned during period between time of discharge and end of year, question as to whether plaintiff was wrongfully discharged without cause and matter of damages were of fact and for the jury.

5. SAME—APPLICATION CARD—RIGHT TO DISCHARGE WITHOUT NOTICE—CONTRACTS.

Whether or not application card containing printed provision permitting termination of employment by either party without notice was a part of oral contract of employment of manager of retail household appliance department was a question of fact for jury in action of assumpsit for balance of salary and commissions less sum earned between date of discharge and end of year.

6. APPEAL AND ERROR—MASTER AND SERVANT—VERDICTS—GREAT WEIGHT OF EVIDENCE.

In action of assumpsit by manager of retail household appliance department for balance of year's salary and commissions less amount earned elsewhere, verdict for plaintiff was not against the great weight of the evidence.

Appeal from Genesee; Elliott (Philip), J. Submitted April 9, 1942. (Docket No. 48, Calendar No. 41,786.) Decided May 18, 1942.

Assumpsit by Nelson H. McIntyre against Smith-Bridgman & Company for salary. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*McTaggart & Krapohl,* for plaintiff.

*Guy W. Selby,* for defendant.

STARR, J. Prior to about March 1, 1935, plaintiff was employed by Caswell, Inc., as manager of its branch retail household appliance store in the city of Flint. On about March 1, 1935, Caswell, Inc., sold its Flint store to defendant. At the time of

such sale plaintiff and defendant entered into an oral contract whereby plaintiff was employed as manager of the household appliance department of defendant's store at a salary of $2,000 *per year,* payable in semimonthly instalments of $83.33, plus 3 per cent. commission on the net sales of such department. The transactions for the purchase of the store by defendant and for the employment of plaintiff were concluded on about March 5, 1935, but were made effective from March 1st.

Plaintiff continued as manager of defendant's household appliance department until about May 15, 1938, when he was discharged. His salary was paid to June 1st, and his commission, to May 1, 1938. A few days after his discharge plaintiff tendered his services for the balance of the year period of March 1, 1938, to February 28, 1939. After his discharge he obtained other employment.

On December 18, 1939, plaintiff began suit against defendant for breach of an alleged contract of employment for the year period of March 1, 1938, to February 28, 1939. Plaintiff's claim and suit were based upon the theory that he was first employed for a one-year period beginning March 1, 1935, and ending February 28, 1936; that the continuation of his employment after the expiration of the first year period, without change in the terms of his oral contract, operated as a renewal of his contract on a year-to-year basis; and that the last renewal was for the year period from March 1, 1938, to February 28, 1939. Plaintiff claims the difference between the amount of his regular salary and commission and the amount he earned at other employment for the balance of the year period; that is, from the time of his discharge until February 28, 1939.

Defendant's answer denied liability and alleged in substance that the contract of employment was

oral and not to be performed within one year and, therefore, was void under the statute of frauds;[*] that the contract of employment was terminable at the will of either party; that defendant had the right to discharge plaintiff, because he did not perform his work and duties in a satisfactory manner; and that the duration of the contract was too indefinite and uncertain to form the basis for the assessment of damages for its breach.

The case was tried before a jury. At the conclusion of the testimony defendant's motion for directed verdict was taken under advisement. The jury returned verdict for plaintiff in the amount of $1,877.74, and judgment was entered on such verdict. Motion for judgment notwithstanding the verdict and motion for new trial were denied. Defendant appeals.

Plaintiff testified regarding the oral contract he made with defendant in March, 1935, in part as follows:

"Mr. Jackson (president of defendant company) asked me on what basis I wanted to work. I told him $2,000 *per year*, plus 3 per cent. of the net business. * * *

"The year was to begin March 1, 1935, and I was to be paid semimonthly. The year was to end the last day of February, 1936. * * *

"I continued to draw it (salary and commission) each month until March 1, 1936. There was nothing happened at that time and nothing said by Pitkethly (then secretary of defendant) or by Smith-Bridgman & Company (defendant), or by me and no change was made. I just continued right on with the work the same. There was no change made in my pay. I continued to receive my checks each two weeks and my bonus at the end of the month just the same.

---

[*] See 3 Comp. Laws 1929, § 13417 (Stat. Ann. § 26.922).—Reporter.

"*Q.*   Now at the end of March 1, 1937, what if anything was said or done?

"*A.*   There was no change.   I continued to receive my checks each two weeks and my bonus at the end of the month just the same.

"*Q.*   March, 1938, March 1st, what, if anything, was said or done?

"*A.*   There was nothing said or done.   I continued.   * * *

"Mr. Pitkethly never gave me any specific reason for discharging me.   I asked him point blank why I was being discharged.   He just said, 'Carelessness and inefficiency.'"

On cross-examination plaintiff testified:

"At the end of the year (February 28, 1936) when nothing further was said I kept on working.   The period of the contract was for one year.   The next year nothing was said and I kept on working.

"*Q.*   * * * Did you have a talk with them about how long this contract was to continue?

"*A.*   No, sir.

"*Q.*   Nothing was said by them or by you?

"*A.*   No, sir.

"*Q.*   It was just a contract that was to continue from year to year, indefinitely, is that right?

"*A.*   Yes, sir.

"*Q.*   Until you were dissatisfied, or they were?

"*A.*   Yes, sir, or terminated.

"*Q.*   This is after the first meeting nothing was ever said about a renewal of the contract?

"*A.*   No, sir."

Mr. Pitkethly, secretary-treasurer of defendant company in 1935 and president and general manager at the time of trial, was called for cross-examination. He testified, in part:

"The plaintiff was an employee of the Caswell Company.   Smith-Bridgman & Company (defendant) made an agreement with the plaintiff, Mr.

McIntyre, to carry on as general manager of the department. * * * I very distinctly remember saying that 'We don't pay on a yearly basis; we have no contracts on a yearly basis; we pay on a weekly basis, and a bonus, or a 3 per cent. bonus will be paid every month.' * * *

"Q. And what was he (plaintiff) discharged for? * * *

"A. Failure to cooperate with the management.

"Q. * * * Well, now, will you tell us in what respect he failed to cooperate with the management?

"A. Attitude and lack of preparation in doing the things that we wanted done. * * *

"For the good of the business I decided it was better that he find another job. * * *

"Q. Was there ever anything said at the end of that year (February 28, 1936) concerning his further employment?

"A. No, sir; not that I know of.

"Q. In other words, he just went on working?

"A. I presume. * * *

"Q. * * * So it was clear at the time you hired him, he and you talked together concerning his employment that he was hired for one year?

"A. *For one year.*"

On cross-examination by defendant's attorney, Mr. Pitkethly testified:

"A contract was made with Mr. McIntyre *for a year* at a certain salary and he continued after that without any further discussion. It was for an indefinite period so long as he was satisfactory."

Plaintiff's testimony was, in part, corroborated by the testimony of a secretary to defendant's president, who was present at the time of the interview between plaintiff and Mr. Pitkethly in March, 1935.

The testimony presented questions of fact as to the terms of the oral contract between plaintiff and defendant and as to the renewal of such contract

from year to year. Such questions of fact were submitted to the jury under proper instructions by the trial court.

The case of *Sines v. Wayne County Superintendents of the Poor,* 58 Mich. 503, involving the renewal of an oral contract of employment, presented a situation somewhat similar to the one now before us. In that case we said, p. 506:

"It is urged by defendants that the contract claimed by the plaintiff is void by reason of the statute of frauds; that the talk with the president in September, to continue work until he had laid the matter before the board, was a contract not to be performed within a year. But this is an erroneous view of the testimony. *The contract had been previously made for a year's service, and under that contract defendant had gone on from year to year, and in such cases, if nothing is said or done by either party at the end of the year to terminate it,* but on the contrary, the person performing service is allowed to continue on without objection, *the facts raise the presumption from which the jury have found that both parties have assented to the contract continuing in force for another year. Tatterson* v. *Suffolk Manfg. Co.,* 106 Mass. 56. The case of *Tallon* v. *Grand Portage Copper Mining Co.,* 55 Mich. 147, as was said by us when the case was here on a former occasion, rules this case upon the point under consideration."

In *Reynick* v. *Allington & Curtis Manfg. Co.,* 179 Mich. 630, 643, involving the question of the renewal of an employment contract for a year period, we said:

"We think it clear the question of the character of the hiring *could not be decided as a matter of law.*

"As to the effect of entering upon another year's work, we think what was said in *Sines* v. *Wayne County Superintendents of the Poor,* 58 Mich. 503, is germane: (above quoted)."

In *Reinhard* v. *Grand Rapids School Equipment Co.*, 211 Mich. 165, 169, 173, 174, 177, 179, plaintiff sued to recover commissions under an alleged oral contract. In that case Mr. Justice Steere stated:

"There was abundant testimony on the part of plaintiff fairly to carry that issue of fact to the jury. * * *

"This and other evidence as to what was said and done in that connection fairly raised an issue of fact for the jury. * * *

"The questions of what the disputed provision of the otherwise conceded contract was and in what manner or to what extent performed, were clearly made issues of fact by the conflicting testimony. * * *

"When their testimony conflicted it remained for the jury to determine what the contract was. *Durgin* v. *Smith,* 133 Mich. 331; *Hudson* v. *Columbian Transfer Co.,* 137 Mich. 255 (109 Am. St. Rep. 679). * * *

"Their conflicting testimony as to certain of its provisions raised issues of fact controlling in this contention which in their final determination were strictly within the province of the jury to decide."

See, also, *Bailey* v. *Sibley Quarry Co.*, 169 Mich. 227; *Holmes* v. *J. W. Wells Lumber Co.*, 274 Mich. 166; *W. C. Sterling & Son Co.* v. *Watson & Bennett Co.*, 193 Mich. 11; *Ward* v. *Beecher*, 56 Mich. 616; *Jenness* v. *Shaw,* 35 Mich. 20.

In its answer defendant alleges that the oral contract in question was not to be performed within one year and was, therefore, void under the statute of frauds. Defendant's president and general manager testified: "A contract was made with Mr. McIntyre (plaintiff) *for a year* at a certain salary." It is clear that such contract was to be performed within one year and was not void under the statute of frauds. *Southwell* v. *Parker Plow Co.*, 234 Mich.

292; *Epstean* v. *Mintz,* 226 Mich. 660; *Smalley* v. *Mitchell,* 110 Mich. 650.

The question as to whether plaintiff was wrongfully discharged without cause was one of fact and was properly presented to the jury. *Loew* v. *Hayes Manfg. Co.,* 218 Mich. 595; *Milligan* v. *Sligh Furniture Co.,* 111 Mich. 629; *Shaver* v. *Ingham,* 58 Mich. 649 (55 Am. Rep. 712). The question of plaintiff's damages was one of fact for the jury.

Defendant contends that plaintiff, at the time of his employment in March, 1935, signed an "application-for-position" card which contained the following printed provision:

"It is understood that if the applicant is employed by Smith-Bridgman & Company, such employment may be terminated either by the applicant or Smith-Bridgman & Company at any time without notice."

Plaintiff claimed that such application card had been made out prior to the making of the oral contract with defendant in March, 1935; that such card was to enable the bookkeeping department of his former employer to keep a record of all employees; that his name was printed at the top of the card, but, that he never signed the same; that the card was never completely filled out nor dated; and that it was not a part of the oral contract of hiring in March, 1935.

Whether or not the provisions of such application card were made a part of the oral contract was a question of fact for the jury.

We are satisfied that the verdict was not against the great weight of the evidence.

The judgment is affirmed, with costs to plaintiff.

Chandler, C. J., and Boyles, North, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.