SLOAN v. WARREN CIVIL SERVICE COMMISSION

1. CONTRACTS—STATUTE OF FRAUDS—PERFORMANCE WITHIN ONE YEAR.

A contract which was annually extended by oral agreement did not violate the statute of frauds because each oral extension was a contract to be performed within one year.

2. LABOR RELATIONS—CONTRACTS—WRITING.

A contract between a union and an employer does not have to be in writing in order to be enforceable.

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur, Statute of Frauds § 34.
[2, 3] 48 Am Jur 2d, Labor and Labor Relations §§ 468, 1293.
[4] 38 Am Jur, Municipal Corporations § 709.
    25 Am Jur 2d, Elections § 11.
[5] 15 Am Jur 2d, Civil Service § 7.
[6] 50 Am Jur, Statutes § 313.
    16 Am Jur 2d, Constitutional Law § 144.
[7] 15 Am Jur 2d, Civil Service § 3.
[8] 15 Am Jur 2d, Civil Service §§ 3, 7.
[9] 15 Am Jur 2d, Civil Service §§ 16–18.

3. Labor Relations—Contracts—Oral Agreement.
   An oral agreement between a union and an employer is valid, unless a writing has been requested by either party.

4. Municipal Corporations—Civil Service—Adoption—Constitutional Law.
   A civil service plan, adopted pursuant to a city charter which received a majority vote of those voting on the charter satisfied constitutional requirements, even if there had been no vote on the civil service plan itself, if the civil service plan was adopted before the effective date of a constitutional provision requiring a vote on the civil service plan.

5. Municipal Corporations—Civil Service—Modification—Constitutional Law.
   A city's civil service plan, even if it was established before the adoption of a constitutional provision requiring a vote of the people to establish a civil service plan, can be modified or discontinued only by a vote of the qualified electors (Const 1963, art 11, § 6).

6. Constitutional Law—Statutes—Construction.
   Statutes are to be read in conformity with the constitution.

7. Constitutional Law—Municipal Corporations—Statutes.
   Constitutional provisions relating to civil service employees of cities have not been modified by the public employment relations act (Const 1963, art 11, § 6; MCLA § 423.201 *et seq.*).

8. Constitutional Law—Municipal Corporations—Civil Service—Statutes.
   Constitutional provision empowering a city to adopt a merit system for its employees has not been modified by a statutory provision requiring that municipal employees "confer in good faith" with respect to wages, hours, and conditions of employment (Const 1963, art 11, § 6; MCLA § 423.215).

9. Municipal Corporations—Civil Service Commission—Authority—Statutes.
   A city's civil service commission, granted by ordinance the authority to determine the qualifications of applicants for a city's service, had the power to decide that certain employees' former job classification was higher than another job classification and to determine the qualification for each classification, even though a statute requires municipal employees to confer in good faith with respect to wages, hours, and conditions of employment, because that provision was not a statutory

grant enabling the city and the employees' union to bypass civil service requirements; the city improperly refused to obey its civil service commission's finding ordering certain workers rehired where the finding was based on a determination of the relative rank of job classifications (MCLA § 423.215).

Appeal from Macomb, Alton H. Noe, J.   Submitted Division 2 April 16, 1970, at Detroit.   (Docket No. 7,080.)   Decided September 29, 1970.   Leave to appeal granted February 12, 1971.   384 Mich 806.

Complaint for mandamus by Joseph Sloan and James Shipley against the City of Warren, Local 1250, AFSCME, and others to compel reinstatement of plaintiffs to their prior positions of city employment.   Complaint dismissed.   Plaintiffs appeal. Reversed and remanded for issuance of writ of mandamus.

*David N. Walsh,* for plaintiffs.

*A. L. Zwerdling,* for defendant union.

*Emil E. Cardamone,* City Attorney, and *William S. Wolanin,* Assistant City Attorney, for defendant City of Warren.

Before: LESINSKI, C. J., and QUINN and O'HARA,* JJ.

LESINSKI, C. J.   Plaintiffs Joseph Sloan and James Shipley filed this suit below seeking a writ of mandamus requiring the defendant, City of Warren, to reinstate plaintiffs to their prior positions of employment with the city.   Defendants prevailed below and plaintiffs appeal as of right.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

In 1951, defendant Local Union 1250, AFSCME (hereinafter the Union), was certified to represent the city's employees. At that time the city and Union entered into a written contract[1] which provided, *inter alia:*

"*Section* 4. When there are layoffs for any reason, the following procedure shall be followed:

\* \* \*

"b. Thereafter, employees shall be laid off in line with their seniority. Employees with seniority *who are qualified* and willing to do the work of the employees to be displaced, in a *lower* classification, may do so at the current rate for the job in the lower classification. Employees not willing to take a job in a lower classification shall be laid off until a job in his classification.is open". (Emphasis supplied.)

The contract was extended by oral agreement from year to year with various oral amendments agreed upon by the parties. The above noted provisions, allowing an employee to "bump" any other city employee with less seniority in a lower classification as long as he was "qualified", was retained.

In 1967, the City of Warren eliminated its garbage collection department and contracted the function out to a private firm. As a result of the ensuing layoffs, a number of the garbage collectors took advantage of the "bumping" provision to obtain new jobs within the city. Plaintiffs, maintenance men in the water department, were replaced by others with higher seniority from the sanitation department.

---

[1] The contract was not a part of the record below. At oral argument before this Court, counsel for plaintiffs and union stipulated to the admission of the 1951 written contract to the record on appeal. Counsel for the City of Warren refused to so stipulate and was ordered to produce it.

After exhausting their contractual grievance procedures within the union,[2] plaintiffs went to the Warren City Civil Service Commission (hereinafter, the Commission). The Commission unanimously ruled, after a full hearing, that plaintiffs had been improperly removed from their jobs and ordered their reinstatement. The basis of the order was the finding that the "bumping" employees' prior job classification (Equipment Operator 1) did not involve the same degree of responsibility, authority, or technical ability as plaintiffs' job classification (Water and Sewer Maintenanceman 1). The city refused to comply with the order and the trial court dismissed plaintiffs' suit for mandamus.

Two issues are raised on appeal: first, whether the annual oral extension of the labor agreement is valid and enforceable, and second, whether the Commission had the jurisdiction and authority to order plaintiffs' reinstatement.

Plaintiffs argue that the oral contract is void on two grounds: it violates the statute of frauds (MCLA § 566.132 [Stat Ann 1953 Rev § 26.922]); and, notwithstanding the statute of frauds, labor agreements must be in writing. We disagree.

The contention that the contract is void due to the statute of frauds is without merit. The oral agreements each extended the written contract for a one-year period. Each oral extension was a contract to be performed within one year. *McIntyre* v. *Smith-Bridgman & Co.* (1942), 301 Mich 629. The extensions did not violate the statute. See, also, *Reynick* v. *Allington & Curtis Manufacturing Co.* (1914), 179 Mich 630; *Sines* v. *Superintendents of the Poor* (1884), 55 Mich 383.

---

[2] At trial there appeared to be some disagreement as to whether plaintiffs had in fact exhausted their contractual grievance procedures. However, defendants have not raised the issue on appeal and the issue is assumed to be waived. GCR 1963, 813.1, 814.1.

*H. J. Heinz Co.* v. *National Labor Relations Board*
(1941), 311 US 514 (61 S Ct 320, 85 L Ed 309), is
cited for the proposition that labor agreements must
be reduced to writing. However, the issue in *H. J.
Heinz* was whether the *refusal* of an employer to
sign a written contract, after being requested by
the union to do so, constituted unfair labor practice.
As pointed out in *United Shoe Workers of America,
CIO* v. *LeDanne Footwear, Inc.* (D Mass, 1949), 83
F Supp 714, 715:

"[T]he [lower] court relies on *H. J. Heinz Co.*
v. *National Labor Relations Board* (1941), 311 US
514, 525 (61 S Ct 320, 85 L Ed 309). That case,
however, goes no farther than to hold that an em-
ployer who had arrived at an agreement with a union
as a result of collective bargaining was guilty of an
unfair labor practice in refusing at the union's re-
quest to embody that agreement in a written and
signed contract. *It in no way indicates that the Act
makes any oral agreement between unions and em-
ployer unenforceable, or requires it to be reduced to
writing when the parties made no objection to leav-
ing it in oral form.*" (Emphasis supplied.)

The point was again made in *Hamilton Foundry &
Machine Co.* v. *International Molders & Foundry
Workers of North America* (1952), 193 F2d 209, 214:

"We do not agree with appellees' contention that
the National Labor Relations Act, as amended, 29
USCA § 151 *et seq.*, requires the collective bargain-
ing agreement to be reduced to writing and signed
in order to be valid. The Act does not so state. In
*H. J. Heinz Co.* v. *NLRB* (1941), 311 US 514 (61
S Ct 320, 85 L Ed 309) and *Cox* v. *Gatliff Coal Co.*
(ED Ky, 1945), 59 F Supp 882 [*aff'd* (CA 6, 1945),
152 F2d 52], it was stated that the Act contemplated
that a collective bargaining agreement be in writing.
Since those decisions, the Act has been amended by
the Labor Management Relations Act of 1947, by

which collective bargaining was defined as including 'the execution of a written contract incorporating any agreement reached if requested by either party.' Section 158(d), Title 29 USCA. In our opinion, this contemplates valid oral agreements where neither party requests a written instrument. *NLRB* v. *Scientific Nutrition Corp.* (CA 9, 1950), 180 F2d 447, 449; *United Shoe Workers* v. *LeDanne Footwear* (D Mass, 1949), 83 F Supp 714".

Moreover, the Public Employment Relations Act (MCLA § 423.201, *et seq.* [Stat Ann 1968 Rev § 17-.455(1) *et seq.*]) (hereinafter the PERA), includes no requirement that agreements be written. Indeed, MCLA § 423.30 (Stat Ann 1968 Rev § 17.454[32]), provides that, for the purposes of the section, collective bargaining includes, *inter alia:* "the execution of a written contract incorporating any agreement reached *if requested by either party*". (Emphasis supplied.) The section, thus, clearly assumes the validity of oral agreements, if a writing is not requested by either party. We conclude that a valid contract existed between the union and the City of Warren.

Plaintiffs' second issue centers around the city's refusal to reinstate them to their former jobs pursuant to the Commission's order. Plaintiffs claim the Commission's order was a valid exercise of its duty; defendants claim that, by virtue of the PERA, the negotiated labor agreement preempts civil service jurisdiction.

The Commission was established pursuant to the Warren City Charter, § 7.28, requirement that the city council establish a civil service plan by ordinance. In 1958, Warren City Ordinance No 18 was passed and provided:

"Section 1. There is hereby established a merit system for all positions in the civil service of the

City of Warren, including unskilled labor. * * *
Appointment to the city's service and promotions
*and transfers therein shall be based solely upon the
fitness, training, seniority and experience of the
individual.*
                          *    *    *

"Section 7. The Board [the Commission] shall
have the *power to prescribe and enforce rules and
regulations* for carrying into effect the provisions
of this ordinance.  *   *   *  It shall have the power
to conduct and supervise all examinations and other
tests for fitness *to determine the qualifications* of
applicants for the city's service". (Emphasis sup-
plied.)

We conclude that, in 1958, the Commission would
have had jurisdiction, by virtue of the above-quoted
ordinance, to resolve the dispute among the parties
by determining whether the "bumping" employees
met the qualifications for their new jobs and whether
the new jobs were of a lower classification than the
"bumping" employees' former positions, as required
by both the labor agreement and civil service rules.
It remains to be seen, however, whether that juris-
diction has been altered by later legislative and con-
stitutional developments.

Michigan Const 1963, art 11, § 6, provides that:

"By ordinance or resolution of its governing body
which shall not take effect until approved by a
majority of the electors voting thereon, unless other-
wise provided by charter, each  *   *   *  city  *   *   *
may *establish, modify or discontinue* a merit sys-
tem for its employees."[3]   (Emphasis supplied.)

---

[3] The concern of the convention members over the impact of this
provision on cities such as Warren which had a *preexisting* civil
service before the adoption of the constitution can be seen by refer-
ence to 2 Official Record, Constitutional Convention 1961, pp 2796,
2797:

"*Mr. Allen:*  *   *   *  The city charters of some of our cities pro-
vide that the local governing body may put in a civil service plan.
This is done by ordinance and is not referred to a vote of the people.

We conclude that a preexisting civil service plan, adopted pursuant to a city charter which received a majority vote of the electors voting on the charter, would satisfy the requirements of the constitutional provision. However, a vote of the people would be required in order to modify or discontinue the plan *after* the constitution was adopted.

The defendants argue that under the PERA, enacted in 1965, collective bargaining agreements must prevail over civil service provisions. Defendants cite MCLA § 423.215 (Stat Ann 1968 Rev § 17.455 [15]), which requires municipal employees to "confer in good faith with respect to wages, hours, and * * * conditions of employment", as a statutory grant of power to the city and the union to bypass civil service requirements and as standing for the proposition that internal union grievance procedures should take care of disputes such as this. We do not agree.

The flaw in defendants' argument is their contention that the state legislature has modified the civil service provisions applying to employees of cities by the enactment of the PERA. It is hornbook law that statutes are to be read in conformity with the constitution. We do not accept the proposition inherent in defendants' argument that what the con-

---

However, when the charter was adopted, the people voted on the charter. Now, I am wondering, under the language which is offered here, whether or not a city which has a charter which authorizes the city council to put in a civil service plan without a vote of the people would be permitted to do so.

"*Mr. Martin:* * * * [I] think it would. * * *

"*Mr. Allen:* * * * We have also a number of cities which in their charter have provided, or even by an ordinance which has been referred to a vote of the people, have set up a civil service plan, but then they want to abolish it or they want to modify it in some way. Would your amendment require * * * a vote of the people, even though the city charter provided that the city council could do it on its own vote?

"*Mr. Martin:* * * * The vote of the people refers to * * * 'establish, modify or discontinue.' * * * I think a vote of the people would be required to modify or discontinue."

stitution gives the legislature can take away. We conclude that the commission had jurisdiction in the instant case to determine the skills and abilities needed for various jobs and the equality of the different job classifications.[4]

The Commission's rules and regulations provide for the transfer of employees, in case of layoffs to equal or lower job classifications.[5] The labor agreement, as written, contemplates transfers in case of layoffs to jobs of *lower* classifications, but appears from the testimony below to have been orally amended to also provide for transfers to jobs of equal classification in case of layoffs. To that extent, therefore, the labor agreement is entirely consistent with the civil service plan. In this case, it was inherent in the Commission's ruling that "Water and Sewer Maintenanceman 1" was a *higher* job classification than "Equipment Operator 1." Such a ruling was necessary to implement both the layoff provision of the Commission's rules and regulations and the "bumping" provision of the labor agreement. Since, by ordinance, the Commission is charged with the duty of classifying jobs, we conclude that the trial court should have followed the Commission's order.

Reversed and remanded to the trial court for further action not inconsistent with this opinion. The trial court shall allow the defendants-appellees to present proofs in defense of this cause, and to defend on the merits. No costs, a public question being involved.

All concurred.

---

[4] Our holding that the Commission had jurisdiction to act as it did is not meant to imply that the Commission either does or does not have jurisdiction over other matters. Such questions are left for other cases.

[5] City of Warren, Civil Service Commission, *Rules Regulations Procedures* (1965), Rule 20.