LEWIS H. CHAMBERLAIN v. THE DETROIT STOVE WORKS.

*Corporations—Salary of officer—Contract—Separate employment— Evidence.*

1. Unless it can be said that the evidence offered by the plaintiff wholly fails to show a right to recover, such right is, at least, a question of fact for the jury, upon the testimony.

2. The president of a corporation, whose power to make contracts with employés had been recognized, agreed with its secretary to increase his salary for a given year from $5,000 to $6,000. In a suit by the secretary to recover said increase and other claims, it appeared that his services were performed under said agreement, and the issue on this branch of the case was as to whether or not the plaintiff had agreed with the president to postpone the payment of the increase, as plaintiff testified, or, in view of the fact that the business of the corporation had not been prosperous for said year, had agreed to waive the payment of said increase of salary, as testified by the defendant's president. And it is held that the defendant cannot complain of an instruction that the $1,000 should be allowed if the jury should find that the agreement was simply to postpone its payment, it appearing that the time of such postponement, if one was agreed upon, had expired.

3. An employé of a corporation was elected its secretary, and, after serving in that capacity for several years at an annual salary, his official relation was terminated, after he had served for a portion of the current year, by the election of a successor. At the expiration of the year he sued the corporation to recover the balance of the yearly salary, upon the theory that his employment was distinct and separate from the office of secre-

tary, the duties of which were nominal; that he was employed by the corporation before his election to the office of secretary; that his duties after his election were substantially the same as before; and that his employment was by the year, at an annual salary. The defendant, on the other hand, claimed that, as secretary, the plaintiff had no claim upon the corporation beyond the tenure of his office, and that, although he held over for a portion of the year by reason of the failure of the corporation to elect directors, his term of office was regularly terminated as before stated, and that the corporation was under no obligation to keep or pay him longer. And it is held:

a—That, while the right of the corporation to terminate plaintiff's official relation at the time it did so is unquestionable, it does not conclusively follow that another relation, dependent upon the engagements and contracts of the parties, did not exist.

b—That while it appears that no express employment occurred at the beginning of the year, or at any other time for several years, the circumstances might warrant the conclusion that the parties mutually understood that it was to continue; that what the relation was, and how long it was to continue, depended upon the original hiring, the subsequent relation, the nature of the services performed, and the mutual understanding of the parties.

c—That it was competent for the jury to determine from the evidence that the hiring was annual, and not subject to revocation or change by the board of directors; that, while a contract for a year could not exist unless the circumstances warranted the inference that the parties so understood it, such agreement or understanding may be inferred from a custom or usage which the parties may be considered as having contemplated.

4. Error is assigned upon certain testimony given by the plaintiff on rebuttal, contradicting that of the defendant as to a certain statement alleged to have been made by the plaintiff, on the ground that it was a repetition of his testimony given in making his case. And it is held that, if such denial had been previously made, as claimed, it was unnecessary to repeat it; that such denial is not pointed out by counsel, and, if it had not been made, it was properly received on rebuttal; and that in either case it was not an abuse of discretion to admit it, in case of doubt as to its having been made.

Error to Wayne. (Donovan, J.) Argued November 2, 1894. Decided December 18, 1894.

*Assumpsit.* Both parties bring error. Affirmed. The facts are stated in the opinion.

*Maybury & Lucking (John D. Conely,* of counsel), for plaintiff.

*F. A. Baker,* for defendant.

HOOKER, J. The defendant is a manufacturing corporation organized under the act of 1853, by the terms of which act its management is lodged in a board of directors elected annually. The officers, including president and secretary, were elected annually. In June, 1885, the president died, and was succeeded by the vice president, Mr. Barbour, who was regularly elected president in the following January, and has since held the office.

Previous to the death of the former president, the plaintiff was employed in the office of the company at an annual salary of $3,500. Having acquired some stock, he was made a director at the annual meeting of the stockholders in January, 1886, and upon the same day he was elected secretary, and was regularly re-elected each year up to and including 1891. In December, 1886, he was credited with $3,500, and in April, 1887, with $500, for salary in 1886, and in December, 1887, with $4,000 for the year 1887. The testimony upon both sides shows that in January, 1889, a conversation occurred between the plaintiff and the president, wherein it was agreed that the plaintiff's salary should be $5,000 for 1888, and $6,000 for 1889. The plaintiff stated that it was agreed that he should have $6,500 for 1890, and he thought, but was not positive, for 1891 also. Mr. Barbour stated that the conversation covered two years only, and that nothing was said about a salary of $6,500. The plaintiff was paid $5,000 for 1888. They agreed that he did not receive $6,000 for 1889, and that only $5,000 was credited.

Chamberlain's version is that in January, 1890, a talk was had, in which he agreed to waive for the time being the advance in salary, until such time as he (the president) could, or until such a future time as he would, make it good; that, with that understanding, Chamberlain would postpone the payment of it; and that Barbour would ultimately make it good to him.    The talk grew out of the fact that the yearly balance was unsatisfactory. He said further that the $1,000 was to be paid later.    Mr. Barbour stated that Mr. Chamberlain said to him, "It has not been a prosperous year, and 'you can make my salary the same as last year,—$5,000;" and that not a word was ever said about the payment of $1,000 at a subsequent time.    Chamberlain was credited with and drew $5,000 a year from that time.

In May, 1892, the annual meeting which should have been held in January, 1892, was held.    Chamberlain was not elected director.    The new board met the same day, and another was elected secretary in place of Mr. Chamberlain.    On May 10, 1892, the president sent a letter to Chamberlain, requesting his resignation; saying that Mr. Shaddinger would succeed him, and that his salary would be allowed to July 1.    To this Chamberlain responded, claiming the full year's salary, in view of his not having received notice in January, and also in view of the agreement made when his salary was advanced in 1888.    He also asked him, in considering the proposition, not to forget that Mr. Tefft, the former president, had intended to present him (Chamberlain) with stock to the value of $1,000, which intention Barbour had repeatedly said that he would, in due time, make good.

After the year expired he commenced this action, claiming (1) $1,000 for the year 1889; (2) $1,500 for back salary for 1890; (3) $1,500 for back salary for 1891; (4) $279.26 for balance of salary for June, 1892; (5) $2,500

for salary from July 1 to December 31, 1892; (6) $1,500 for additional salary for 1892, to make $6,500.  It seems to be conceded that he recovered only for the 1st, 4th, and 5th items.  Both parties appeal, defendant contending that he should not have been allowed to recover any sum, as he stopped working May 31, 1892.

The agreement to pay $6,000 for 1889 is clearly proved, and it is as satisfactorily shown that the services were fully performed under that arrangement.  It is significant that no credit was ever made of the $1,000, and that no demand for the same was ever made; also that in his letter the plaintiff did not demand $1,000 as his due upon the salary for 1889, but asked consideration of the 1888 agreement in connection with his offer to "terminate his connection with the house on the basis of such a settlement." Unless we can say, however, that the evidence wholly fails to show a right to recover, we must find, at the least, a question of fact for the jury, upon the testimony.  Counsel's brief says that—

"The transaction, as stated by the plaintiff, is so indefinite and shadowy that the court below should have instructed the jury not to allow this item.  His evidence might be sufficient to warrant the submission of the question to the jury, if Mr. Barbour had been acting for himself; but when it is remembered that he was simply the agent of the corporation, and that both he and the plaintiff were members of the board of directors, I submit that there is not enough in the transaction, as stated by the plaintiff, to bind the corporation."

No claim of fraud or collusion between the two directors is charged, and for several years the plaintiff's increase of salary from $4,000 to $5,000 has been paid without question by the other directors or stockholders.  Apparently the power of the president to make contracts with employés has been recognized.  If there is anything indefinite and shadowy, it was what occurred at the close of 1889, rather

than the arrangement to make the salary $6,000, which Barbour admits.   It being shown that the services were performed under this promise, we think that the defendant cannot complain of the instruction that the item should be allowed by the jury if they should find that the agreement was simply to postpone payment.

The jury evidently found that the plaintiff was entitled to pay for the whole year 1892 at the rate of $5,000. This was apparently upon the theory that his employment was by the year, at the salary which was paid and accepted for the previous years.   Defendant's position is that, as secretary, plaintiff had no claim upon the company beyond the tenure of his office, and that although he held over, from a failure to elect directors in January, 1892, his term of office was regularly terminated in May by the election of a successor as secretary, and the company was under no obligation to keep or pay him longer.   On the other hand, the plaintiff claims that his employment was distinct and separate from the office of secretary, whose duties were nominal; that he was employed before he held the office, and that his duties after his election were substantially the same; that his employment was by the year—his salary, annual.

There can be no doubt of the correctness of the defendant's position as to the right of the defendant to terminate the plaintiff's official relation at the time it did so, but we think that it does not conclusively follow that another relation did not exist, dependent upon the engagements and contracts of the parties.   It appears that no express employment occurred in January, or at any other time for several years, but we think the circumstances might warrant the conclusion that the parties mutually understood that the employment was to continue.   What the relation was, and how long it was to continue, depended

upon the original hiring, the subsequent relation, the nature of the services performed, and the mutual understanding of the parties. As to duration, we think it was competent for the jury to determine from the evidence that the hiring was annual, and not subject to revocation or change by the board of directors or the president. It perhaps goes without saying that a contract for a year could not exist unless the circumstances warrant the inference that the parties so understood it. Such agreement or understanding may be inferred from a custom or usage which the parties may be considered as having contemplated. See 2 Pars. Cont. 33; *Tallon v. Mining Co.*, 55 Mich. 147; *Sines v. Superintendents of Poor*, 55 Id. 383; *Bradley v. Covel*, 4 Cow. 349; *Evertson v. Sawyer*, 2 Wend. 507. We think that the court properly left this question to the jury.

Upon rebuttal the plaintiff was asked the following question:

"*Q*. Mr. Barbour stated that at the end of the year 1889 you came to him and said, ' Make my salary $5,000, the same as last year,' and that not another word was said. Is that true?

"*A*. No, sir."

Error is assigned upon this, as a repetition of the testimony given in making plaintiff's case. Technically speaking, if the plaintiff's version of that transaction, given on direct, was credited by the jury, they could not credit Barbour's statement that "that was all that was said." It is possible that plaintiff had previously testified that he did not go to Barbour, and make the statement mentioned. If he did it was unnecessary to repeat it. Counsel does not point us to such denial, and if it was not previously made it was proper in rebuttal. In either case we cannot say that it would have been an abuse of discretion to admit it, in case of doubt of such previous denial.

This disposes of the questions raised by the defendant, as nothing was recovered for back salary for 1890 or 1891, as appears from defendant's brief.

It is unnecessary to discuss the questions raised by the plaintiff's appeal, the same being voluntarily waived unless the case is to be reversed upon defendant's appeal.

The judgment will be affirmed.

The other Justices concurred.