Argued 27 February;  decided 30 April, 1899.
## McKINNEY *v.* STATESMAN PUBLISHING CO.

[56 Pac. 651.]

1. Construction of Contract—Hiring at Will.—A contract of employment for a year containing an agreement that "this contract shall be renewed during the strict performance of its conditions," is a contract at will which may be terminated by either party at his pleasure, after the expiration of the stated period:  *Christensen* v. *Pacific Coast Borax Co.*, 26 Or. 302, cited.

2. Construction of Contract—Renewal Clause.—Such a contract, however, imposes on the employer the obligation to renew the contract on the same terms for a second year.

3. Construction of Contract—"Settlement."—The word "settlement," as used in a contract requiring a collector to pay in moneys as he collects, and make a complete settlement on certain days, means payment, and not a computation of accounts.

From Marion :   George H. Burnett, Judge.

Action by John W. McKinney against the Statesman Publishing Company.   From a judgment for plaintiff, defendant appeals.

Reversed.

For appellant there was a brief over the name of *Hayden & McNary*, with an oral argument by *Messrs. Robert J. Hendricks* and *J. H. McNary*.

For respondent there was a brief over the names of *George G. Bingham* and *Holmes & Kellogg*, with an oral argument by *Mr. Bingham*.

Mr. Justice Moore delivered the opinion.

This is an action to recover damages for the alleged breach of a contract.   It is alleged that defendant, being duly incorporated, entered into a contract with plaintiff, of which the following is a copy :  "Agreement entered into between the Statesman Publishing Co., of Salem,

Oregon, and John W. McKinney, of Salem, Oregon. The Statesman Publishing Co. agrees to lease to John W. McKinney, for the term of one year from the date hereof, the route in the City of Salem and its suburbs of the Daily Oregon Statesman newspaper. The said John W. McKinney is to have the exclusive charge of said route for said time for the distribution of papers six days in the week, being each day excepting Monday. He is to collect for said paper fifteen cents per week from each of the present subscribers, or any other persons who may subscribe therefor. For each copy of such paper thus delivered he is to pay us at our office the sum of ten cents per week, and to apply on said account all the moneys he can conveniently collect at the end of each and every week, and to make full and complete settlement of his account for the same on the tenth day of each and every month. He shall have each morning, free, five copies of said paper, a part of which number he shall use each day, as his judgment dictates, as sample copies. When the list shall have reached one thousand, he shall have each morning, free, fifteen copies. He shall be allowed, for the delivery of any papers we may order, five cents per week, and in such cases the papers will not be charged to him. He shall be furnished with the number of papers he orders each morning, folded, at the business office of the paper, in Salem. He shall use his efforts every working day in canvassing to increase the subscription lists of the paper in Salem and suburbs. He shall bear the whole expense of the delivery of and collection for such paper, and at the expiration of this contract by limitation, or through neglect to fulfill its provisions, he shall deliver up to the above company the lists of subscribers, with addresses, so far as he may have them. In the event of the termination of this contract with a balance due us, we shall

be entitled to collect such balance from subscriptions due on such lists, paying over any balance above such amount due us to John W. McKinney, after deducting the reasonable expenses of collection.   But the turning over of such lists shall not act as a complete settlement, in case the amount of the indebtedness to us cannot be realized from them.   This contract shall be renewed during the strict performance of its provisions.   Signed in duplicate this 17th day of May, 1895.   Statesman Publishing Co., C. B. Irvine, Mngr.   Accepted.   J. W. McKinney.''   It is also alleged that plaintiff performed all the terms of the agreement imposed upon him, notwithstanding which defendant refused to renew the contract, and on May 17, 1896, wrongfully deprived him of said route, to his damage in the sum of $1,500, for which he prayed judgment. A demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action having been overruled, the defendant filed an answer, denying the material allegations therein, and alleging new matter to which plaintiff replied ;   and a trial being had, resulted in a judgment for plaintiff in the sum of $350, from which defendant appeals.

1.   It is contended by defendant's counsel that the clause contained in the agreement that ''this contract shall be renewed during the strict performance of its provisions,'' is indefinite as to time, which renders such provision void, and that the uncertainty in this respect being manifest from an inspection of the complaint, the defect was not cured by answering over.   In *McCullough Iron Co.* v. *Carpenter*, 67 Md. 554 (11 Atl. 176), it is held that the employment of a person for an indefinite time is a hiring at will, which either party can terminate at pleasure.   Mr. Justice Irving, delivering the opinion of the court, says :   ''There can be no doubt that in this country the rule is, an indefinite hiring is *prima facie* a

hiring at will. It is also well settled that a hiring at so much a week, month, or year, no time being specified, does not of itself make more than an indefinite hiring." In *Lord* v. *Goldberg*, 81 Cal. 596 (15 Am. St. Rep. 82, 22 Pac. 1126), plaintiff was engaged to perform certain service for defendants, who gave him a written memorandum to the effect that his employment should be permanent, so long as he desired to make it so, but thereafter, being unwilling to submit to a reduction of the compensation which they agreed to pay, he left their service; and, having brought an action to recover the damage alleged to have been sustained, it was held that the memorandum evidenced an employment for an indefinite time, which meant that the relation should continue until either party, for good reason, wished to sever it. In *Evans* v. *St. Louis, I. M. & S. Ry. Co.*, 24 Mo. App. 114, plaintiff, a locomotive engineer, having been employed by defendant to run one of its engines, for which it agreed to pay him the sum of $115 a month, was discharged within the month; and, having instituted an action to recover the compensation agreed to be paid for that period, it was held that the agreement to pay a stated sum per month did not, in the absence of other evidence, fix the period of hiring at one month, and that the relation of master and servant was determinable, under such circumstances, at the will of either party. In *Orr* v. *Ward*, 73 Ill. 318, plaintiff entered into a written agreement with the defendant, by the terms of which the latter agreed to pay him for his services as a traveling salesman the sum of $2,100 for the year 1873, and $2,400 for the next year, but in June, 1873, the firm of which defendant was a member having become bankrupt, plantiff was discharged, whereupon he brought an action to recover the damage which he claimed to have sustained by reason of the breach of said agreement; and it

was held that, inasmuch as there was no undertaking on the part of the defendant to continue plaintiff in his employment for any definite length of time, the latter had no cause of action against him on account of the discharge.

In *Howard* v. *East Tenn. etc. R. R. Co.*, 91 Ala. 268 (8 South. 868), plaintiff was employed by defendant as its land agent, at a stated salary per month, to perform certain service, under an agreement which contained no stipulation for the continuance of the employment for any definite period, and, having been discharged, he brought an action to recover the damage alleged to have been sustained; but the trial court, having sustained a demurrer to the complaint, rendered judgment against him, in affirming which Mr. Justice Coleman, speaking for the court, says: "The material inquiry is whether the contract as stated is not void for uncertainty, or one which either party could terminate at will. No damages are claimed for services past rendered, but for a refusal to continue plaintiff in his employment, and there is no averment as to the time when plaintiff was dismissed. The law does not favor, but leans against, the destruction of contracts because of uncertainty; but, when contracts are so vague and indefinite in terms that the intention of the parties cannot be fairly and reasonably collected from them, the court will not undertake to give them effect." In *Coffin* v. *Landis*, 46 Pa. St. 426, it was held that where one employs an agent to sell land, under an agreement that the latter shall receive one-half of the net proceeds arising from such sales, and there is no stipulation in the contract as to the duration of the employment, the principal has the right to terminate the relation at any time, and may discharge the agent without notice. As illustrating the principle that employ-

34 Or.—33.

ment at a stated sum per week, month, or year, indefinite as to the term of service, is a hiring at will, which either party may terminate at pleasure, see *Christensen* v. *Borax Co.*, 26 Or. 302 (38 Pac. 127) ; *Haney* v. *Caldwell*, 35 Ark. 156 ; *De Briar* v. *Minturn*, 1 Cal. 450 ; *Perry* v. *Wheeler*, 12 Bush, 541 ; *Beach* v. *Mullin*, 34 N. J. Law, 343 ; *Prentiss* v. *Ledyard*, 28 Wis. 131 ; *Thomas* v. *Hatch*, 53 Wis. 296 (10 N. W. 393).

2.    It is maintained by plaintiff's counsel, however, that the stipulation to renew the contract is analogous to a covenant to renew a lease of real property, and imposed upon defendant the duty of executing a new contract for the term of one year from May 16, 1896, containing all the conditions of the prior agreement, except the stipulation to renew the contract, but that the defendant, having refused to keep its engagements, is liable to their client for the damage which he sustained by reason of such refusal.    In *Iron Factory Co.* v. *Richardson*, 5 N. H. 294, it is held that where a person is hired for a year at a stipulated price, and continues in the same employment afterwards without any new contract, it is to be presumed that both parties intended that the same price is to be continued.    Mr. Chief Justice RICHARDSON, in speaking of the implied agreement under which the subsequent service was performed, says : "It is like the case of a tenant holding over after the expiration of his term, without any new agreement, in which case an implication arises that there is a tacit consent on both sides that the tenant shall hold at the old rent." In *Rutgers* v. *Hunter*, 6 Johns. Ch. 215, it is held that a stipulation contained in a demise of real property whereby the landlord covenanted to "renew the said lease," without specifying the conditions or terms thereof, implied a leasing for the same term as specified in the original lease, with all its conditions, except the cov-

enant to renew. Mr. Chancellor Kent, speaking of the latter condition, in rendering the decision, says: "If a covenant to renew the lease 'necessarily included a renewal of all the covenants in it, it would be tantamount to a covenant for perpetual renewal, and so extraordinary a covenant ought not to depend on inference merely." In *Creighton* v. *McKee*, 2 Brewst. 383, Mr. Justice Ludlow, after announcing the rule by which the intention of the parties is to be ascertained from the inspection of a lease containing a similar provision, says: "Interpreting the clause in the lease before us by the aid of the principles stated, we must come to the conclusion that the word 'This,' in the clause, 'This lease to be renewable at the pleasure of the lessee,' implies, not only the right of renewal, but also upon the terms and for the time specified in the instrument, at the will and pleasure of the lessee, for at least another term." So, too, in *Cunningham* v. *Pattee*, 99 Mass. 248, Mr. Justice Foster, in construing a clause of a lease which contained the following provision, "And the said lessors do promise to renew said indenture for such further term as their leasehold estate in the premises may be renewed or extended,"—says: "The covenant to renew is not void for indefiniteness. The word, *ex vi termini*, implies the giving of a new lease like the old one, with the same terms and stipulations, at the same rent, and with all the essential covenants." The method adopted to ascertain the meaning of the word "renew," as used in a lease of real property, where no definite time is prescribed, applies, in our judgment, with equal reason, to the meaning of the word as used in the contract under consideration; and, this being so, defendant was required thereby to permit plaintiff to continue the service for the term of another year, upon the same conditions as are mentioned

in the agreement, except as to the stipulation to renew, and hence the complaint states facts sufficient to constitute a cause of action.

3.  The court instructed the jury in relation to plaintiff's duties as follows : "It would be a proper compliance with that condition of the contract, if he turned over at the end of every week all the money he could conveniently collect ; and, in order for them to show a violation of that condition of the contract, it would be necessary to show that he had collected money, and had not turned it over.  No matter how much he might remain in debt to them at the end of the week, or tenth of the month, if he had not collected the money under the contract, it would not constitute a violation of this contract, if he had a settlement on the tenth of each month ; and a 'settlement' means nothing more than to get together and determine upon a balance which is ascertained to be due.  It does not require that he make a payment on the tenth of each month.  He is only required to apply all money on that account that he had collected during the week."  Defendant's counsel, having excepted to this portion of the charge, contend that the court erred in not instructing the jury that the word "settlement," as used in the contract, meant payment.  While the word "settlement" sometimes means an adjustment between persons concerning their dealings or difficulties, whereby a balance is ascertained to be due from one to the other, or an agreement is entered into which terminates their controversy, the word may also be construed to mean a payment of the amount found to be due on the examination of their mutual accounts according to the intention of the parties: 22 Am. & Eng. Enc. Law (1 ed.), 488 ;  *Fort* v. *Gooding*, 9 Barb. 371 ;  *Baxter* v. *State*, 9 Wis. 38 ;  *National Bank* v. *Norton*, 1 Hill, 572. We think an examination and consideration of the con-

tract as a whole shows that the word "settlement," as used therein, was intended by the parties as a payment of the amount ascertained to be due on the tenth of each month.   It will be seen that plaintiff was required to pay the sum of ten cents per week for each copy of the newsdaper which he might deliver to subscribers whom he might secure ; and it was provided that upon a termination of the contract the subscription lists should be delivered to defendant, from which it was entitled to collect any balance due from plaintiff, but that, if such balance could not be collected from the subscribers, the surrender of the lists should not effect a complete "settlement" of defendant's account.   The complete "settlement" to which reference has been made shows that the word in question, as there used, was intended by the parties to mean that the delivery of the subscription lists to the defendant was not to operate as a payment of any balance due from plaintiff to it, unless the same could be collected from the subscribers ; thus conclusively showing, we think, that, as elsewhere used in the contract, the word "settlement" means a payment, and plaintiff on the tenth of each month was required to pay for all the papers that he had delivered, except such as he was entitled to under the agreement.

The more difficult problem is whether the exception to the instruction complained of brings up for consideration the identical question passed upon by the trial court. The word "settlement," as before stated, is ambiguous, being susceptible of two meanings ; and, if standing alone, it might be difficult for the court, from an inspection of the contract, to say with any degree of certainty in which sense it was intended to be used by the parties. In such cases the rule is well settled that evidence *aliunde* the writings is admissible, not to vary or contradict the terms adopted, but to explain the meaning of that

which has been left vague and uncertain: *American Contract Co.* v. *Bullen Bridge Co.,* 29 Or. 549 (46 Pac. 138). The bill of exceptions does not contain any evidence that might ordinarily have been introduced, tending to explain the meaning of the word, from the absence of which it might be argued that it must be presumed that such evidence was admitted, and conclusively showed that the word "settlement" did not mean a payment, and, therefore, no error was committed in giving the instruction. Such a deduction would logically seem to follow, were it not for the fact that the contract, as hereinbefore interpreted, conclusively shows that the word under consideration was intended by the parties to mean a payment; and, this being so, the seeming ambiguity is resolved, thereby rendering any evidence tending to explain the meaning of the word inadmissible, and showing that such presumption cannot be invoked. The court having erred in giving this instruction, it follows that the judgment is reversed, and a new trial ordered.

REVERSED.

Decided 14 September; rehearing denied 17 October, 1898.