Argued January 13, affirmed February 1, rehearing denied March 14, 1916.

# DOOLITTLE *v*. PACIFIC COAST SAFE & VAULT WORKS.*

(154 Pac. 753.)

**Master and Servant—Duration of Employment—Indefinite Hiring.**

1. As a general rule, an indefinite hiring is presumed to be a hiring at will in the absence of evidence of custom or of facts and circumstances showing a contrary intention of the parties.

**Master and Servant — Duration of Employment — Rate and Mode of Payment.**

2. While it is generally held that a hiring at so much per day, week, month or year raises no presumption that the hiring was for such a period, yet the rate and mode of payment are often determinative of the period of service.

**Master and Servant—Duration of Employment—Evidence.**

3. It is competent for either party to a contract of hiring to show the mutual understanding of the parties in reference to the duration of the employment.

**Master and Servant—Duration of Employment—Indefinite Hiring.**

4. Unless the understanding of the parties to a contract of hiring was mutual that the services were to extend for a fixed and definite period, it is an indefinite hiring, and is determinable at the will of either party.

**Master and Servant—Duration of Employment—Indefinite Hiring.**

5. When from a contract of hiring it is evident that it was the understanding of the parties that the time was to extend for a certain period, their understanding, fairly inferable from the contract, will control.

---

*As to duration of contract of hiring which specifies no term, but fixes compensation at a certain amount per day, week, month or year, see note in 25 L. R. A. (N. S.) 529.    REPORTER.

**Master and Servant—Duration of Employment—Evidence.**

6. To show the real understanding and intention of the parties to a contract of hiring respecting its duration, all the facts and circumstances surrounding the parties and the transaction may be shown, as that the employee was to the knowledge of the employer seeking a permanent position.

**Appeal and Error—Review—Questions of Fact.**

7. Under Section 159, L. O. L., providing that the order of proceedings on a trial by the court shall be the same as in trials by jury, and that the finding of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reasons as far as applicable, the findings of the court upon the facts in an action at law tried without a jury import the same conclusiveness as a verdict, and will not be disturbed on appeal when there is any evidence to sustain them.

**Master and Servant—Duration of Employment—Evidence.**

8. Plaintiff, whose family consisted of a wife and six children, resided in Berkeley, California, where he had an apparently permanent position as superintendent of construction for a safe company. Defendant's manager, who had been associated with him in business and was acquainted with his capabilities, asked him to come to Portland as superintendent of defendant's safe and vault works, and asked him to give the proposal his most earnest consideration, stating that he knew it was an important step for a man with a home and family, and that the place would be worth $175 a month for the first year, $200 the second year, and that beyond that would be entirely dependent upon results. Later defendant submitted a formal proposal, stating that it was in accordance with the manager's personal letter, and the proposal was accepted. *Held,* that a finding that the employment was for at least two years was warranted.

[As to letters and telegrams as contracts, see note in 55 **Am. St. Rep.** 47.]

**Corporations—Officers and Employees—Authority—Evidence.**

9. A corporation's manager had sole charge of its plant and of the hiring of plaintiff as superintendent of the plant. All persons interested in the matter acquiesced in the hiring for 16 months. It did not appear that the by-laws controlled the manager's authority in this respect or made any provision relating to the employment of services. *Held,* that a finding that the manager had authority to make the contract with plaintiff was supported by evidence and would not be disturbed.

From Multnomah: George N. Davis, Judge.

Department 1.   Statement by Mr. Justice Bean.

This is an action by R. N. Doolittle against the Pacific Coast Safe & Vault Works, a corporation, for damages for breach of a contract. The court tried

the cause without a jury, making findings of fact in favor of the plaintiff. From a judgment rendered thereon for $1,000 defendant appeals.

Plaintiff alleges the corporate character of defendant, and, in effect, that prior to September 1, 1911, the corporation entered into a contract with him by the terms of which he was employed to act as general superintendent of its plant at Portland, Oregon, for a period of two years, beginning September 1, 1911, and ending September 1, 1913, at an agreed compensation of $175 per month for the first year and $200 per month for the second year; that pursuant to the contract he entered into the service of defendant at the time set, and continued therein until January 1, 1913, when, without reason or excuse, and in violation of the contract, defendant discharged him against his will.

Defendant admits the hiring and the services, but denies that plaintiff was employed for two years. Upon the trial it developed that the contract was negotiated by means of correspondence between the parties by letters and telegrams continuing over more than a month's time. In July, 1911, the plaintiff resided in Berkeley, California, and was employed as superintendent of construction for a safe company in San Francisco. His family consisted of a wife and six children, one a boy of 19, who worked with him. On the 11th of that month the manager of the defendant company, who was acquainted with plaintiff's capabilities, wrote to him submitting a proposal for him to come to Portland and enter into the services of defendant as superintendent of its safe and vault works, describing the business, in which the investment was approaching $200,000, and the future prospects and possibilities, and stating:

"Personally, I know you can fill the bill. * * Now, I would wish you to give this your most earnest consideration, as I know it is a most important step for a man with a home and a family. * * "

Toward the close of the letter the following statement appeared:

"The place would be worth to you $175.00 per month for the first year, $200.00 the second year, and beyond that would be entirely dependent upon the results."

Plaintiff answered that he looked with favor upon the proposition. On July 22d the company, by its manager, Mr. H. Austin Biddle, wrote:

"We * * now beg to submit you formal proposal for your services in accordance with the writer's personal letter to you of the 11th inst., and with the understanding that same must go into effect not later than Sept. 1, 1911."

Plaintiff accepted the proposition by letter, and, pursuant to the arrangement came to Portland and took up the duties of superintendent of the defendant company's plant on September 1, 1911. His services were satisfactory. The results improved. He continued in the employment for 16 months, when, as a result of a change in the management of the plant, he was discharged. Defendant contended that the contract of employment was for an indefinite term, and that the trial court should have found as a matter of law that the writing evidenced such a contract. The company also claimed that it had the right to discharge plaintiff at any time at its pleasure.

It appears from the evidence that at the beginning of the second year of Doolittle's services, at his suggestion, the manager without any question increased his compensation to $200 per month in accordance with the agreement contained in the writings.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Charles A. Hart* and *Messrs. Carey & Kerr,* with an oral argument by *Mr. Hart.*

For respondent there was a brief over the name of *Messrs. Clark, Skulason & Clark,* with an oral argument by *Mr. M. H. Clark.*

MR. JUSTICE BEAN delivered the opinion of the court.

1–6. As a general rule, in the United States, an indefinite hiring is presumed to be a hiring at will, in the absence of evidence of custom, or of facts and circumstances showing a contrary intention on the part of the parties. While it is generally held that the fact that a hiring at so much per day, week, month or year raises no presumption that the hiring was for such a period, but only at the rate fixed for whatever time the party may serve, yet the rate and mode of payment are often determinative of the period of service, and in some cases it has been held that they do raise a presumption as to the period of service: 26 Cyc. 974. It is competent for either party to show what the mutual understanding of the parties was in reference to the matter of employment; but, unless their understanding was mutual that the services were to extend for a fixed and definite period, it is an indefinite hiring, and is determinable at the will of either party; but, when from the contract itself it is evident that it was the understanding of the parties that the time was to extend for a certain period, their understanding, fairly inferable from the contract, will control: 2 Wood, Master & Servant, § 136; *Barlow* v. *Taylor Min. Co.,* 29 Or. 132 (44 Pac. 492); *Christensen* v. *Borax Co.,* 26 Or. 302 (38 Pac. 127); *McKinney* v. *Statesman Publishing Co.,* 34 Or. 509 (56 Pac. 651). In order to show

what the real understanding and intention of the parties was, all the facts and circumstances surrounding the parties and the transaction may be shown, as that the plaintiff was to the knowledge of the defendant seeking permanent position, and any facts and circumstances that tend to establish the mutual understanding: *Franklin* v. *Harris,* 24 Mich. 115; *Fisk* v. *Henarie,* 13 Or. 156 (9 Pac. 322); *Flegel* v. *Dowling,* 54 Or. 40 (102 Pac. 178, 135 Am. St. Rep. 812, 19 Ann. Cas. 1159); 26 Cyc. 969; *Nash* v. *Kreling,* 6 Cal. Unrep. 233 (56 Pac. 260).

7. In an action at law tried by the court without the intervention of a jury the findings of the court upon the facts import the same conclusiveness as the verdict of a jury: Section 159, L. O. L. When there is any evidence to sustain the findings, they will not be disturbed on appeal. In *Kelly* v. *Carthage Wheel Co.,* 62 Ohio St. 598 (57 N. E. 984), the contract was evidenced by correspondence; the plaintiff making an offer which was accepted by the defendant. In his letter the plaintiff says:

"I will want you to guarantee me $3,000 per year, a proportion of this amount to be paid me each day, and a settlement to be made at the end of each year, and, if I should make more than the above guaranty, the difference be paid me at the end of each year, when settlement is made."

Upon acceptance of this offer the plaintiff entered the employ of the defendant on May 1, 1892, and continued therein until September 31, 1893, when he was discharged. Having been paid what he had earned up to the time of his discharge, he brought suit to recover damages in the sum of $1,500 for the six months following. He secured a verdict for the full amount, which was sustained on appeal. In *Kelly* v. *Carthage*

*Wheel Co.,* 62 Ohio St., at page 610 (57 N. E. at page 986), the court says:

"And in the interpretation of contracts of this kind, as well as of all others, none of their provisions should be ignored or overlooked that serve to indicate the intention of the parties."

In *Du Pont* v. *Waddell,* 178 Fed. 407 (101 C. C. A. 335), we find the following language:

"It is true, as said by counsel and sustained by authority, that, nothing more appearing, the language used by the parties would be controlling in fixing the duration of the relation of employer and employee. We must, however, look to surrounding circumstances, the relations then existing, the character of the employment, and if, after doing so, the meaning of the language used and the intention of the parties is doubtful, or capable of more than one construction, the question should be submitted to the jury."

In *Chamberlain* v. *Detroit Stove Works,* 103 Mich. 124 (61 N. W. 532), quoted from in the *Du Pont Case,* we find the following:

"What the relation was and how long it was to continue depended upon the original hiring, the subsequent relation, the nature of the services performed, and the mutual understanding of the parties. As to duration, we think it was competent for the jury to determine from the evidence that the hiring was annual, and not subject to revocation or change by the board of directors or the president."

8. In the present case the trial court, acting in the capacity of a jury, could properly take into consideration the nature of the employment, and the circumstances, as disclosed by the correspondence, which tended to show that at the time he was employed by the defendant he had a large family and was residing in California. He had a position which was apparently permanent. The manager of the defendant

company had been associated with him in the business there, and was satisfied that he would make good. Both parties appear to have been negotiating with a view to making arrangements which were contemplated to continue for a considerable length of time. The statement that, "The place would be worth to you $175.00 per month for the first year, $200.00 the second year," under all the circumstances, would at least warrant a jury in concluding that the employment was for two years; in other words, the contract fixed a definite time.

9. Defendant takes the position that the manager of the corporation was not authorized to enter into this contract with the plaintiff. The evidence tended to show that Mr. Biddle had the sole charge of the plant and of the hiring of plaintiff, and that all persons interested in the matter acquiesced in the arrangement for 16 months. It is said in Herman, Estoppel, Section 800:

"No man can adopt that part of a transaction which is favorable to him, and reject the rest to the injury of those from whom he derived the benefit."

It is not shown that the by-laws of the corporation controlled the authority of the manager in this respect or made any provision relating to the employment of services. In 2 Thompson, Corporations, Section 1580, we find the rule:

"The power of the general manager, acting within the strict scope or the apparent scope of the corporate business about which and over which his employment extends, is practically unlimited as to the details of the business. In the internal management of the corporate business he has been held to have the right to exercise authority in the following instances: To employ clerks, servants and laborers and fix their compensa-

tion; * * to employ a superintendent of a mine; and to employ a foreman in a paper-mill. * * "

The evidence tended to show that the manager had authority to make the contract in question, and the court, acting as a jury, having so found, the findings should not be disturbed.

Finding no error in the record, the judgment of the lower court is affirmed.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE HARRIS concur.