HARRINGTON, RESPONDENT, v. DELORAINE REFINING CO., APPELLANT.

(No. 7,323.)

(Submitted January 30, 1935. Decided February 21, 1935.)

[43 Pac. (2d) 660.]

80

*Messrs. Harris & Hoyt,* for Appellant, submitted a brief;
*Mr. G. G. Harris* argued the cause orally.

82

*Mr. D. W. Doyle*, for Respondent, submitted a brief and argued the cause orally.

HONORABLE GEORGE W. PADBURY, Jr., District Judge, sitting in place of MR. JUSTICE MORRIS, disqualified, delivered the opinion of the court.

This is an action to recover for an alleged breach of contract of employment. The plaintiff alleges in his complaint

that he was employed by the defendant in the capacity of refinery man for a period of time beginning "August 1st, 1932, and ending March 21, 1933," and that on the seventeenth day of October, 1932, without cause or reason, he was discharged, to his damage in the sum of $900. The defendant in its answer alleges that the plaintiff was employed from month to month, and justifies its action in discharging plaintiff for the reason that he did not operate the refinery in a manner satisfactory to defendant. The answer also contains an allegation of payment in full for the months during which plaintiff was employed.

The contract of employment was entirely verbal, and the negotiations were carried on between the plaintiff and Henry Vanderpas, president and manager of the defendant corporation. Excepting for the fact that plaintiff was to receive the sum of $150 a month, water, house and light, the evidence is in hopeless conflict.

As to the contract of employment, the plaintiff testified: "I had my dealing with Mr. William Vanderpas. Those dealings were with regard to my taking the position out there at the refinery. He stopped at the Shelby plant and we talked the things over; I made him a proposition that I would go out for $150, they were to furnish me house, water and light. I was to work until spring. He said he would let me know in two or three days. Afterwards he sent Mr. Knutson after me. We went out to the refinery that evening. They said they would accept my proposition and wanted to know how soon I could come out and go to work for them."

Regarding the contract, Mr. Vanderpas testified: "There was present at the time Mr. Ed Knutson, Everett Rice, Mike Harrington and myself. * * * I will relate the conversation that was had at the time. * * * I asked him how much money he wanted; he said $150 a month. I said, 'Mike, that is pretty steep, because you know we furnish house, water, light and fuel.' He said, 'Yes, Hank, but that is what I have been getting.' 'Well,' I said, 'if you make a success of the plant we will give you a try.' "

The only testimony concerning the negotiations between the plaintiff and defendant, and which fixed the duration of the employment, was the statement of the plaintiff to Vanderpas, as follows: "Now, Hank, I don't want to quit my job, else I would have winter's work until spring. You should know whether you are going to run or whether you ain't."

It is contended by the defendant that, admitting the testimony of plaintiff to the effect that he was to work until spring, the language used would not warrant the court in holding that there was a consummated contract of employment for a definite period of time. We are confronted with the interpretation of the phrase, "to have winter's work until spring."

Webster's International Dictionary defines the word "spring" as follows: "The season of the year when plants begin to vegetate and grow; the vernal season, usually including March, April, and May in the middle latitudes north of the equator." In defining the term "until the summer of 1871," the court, in *Abel* v. *Alexander*, 45 Ind. 523, 15 Am. Rep. 270, said: "The courts take judicial notice of seasons, and of the general course of agriculture. (1 Greenleaf Ev., sec. 5; *Floyd* v. *Ricks,* 6 Eng. 452.) We think the true meaning of the dates named in the answers * * * means up to the commencement of summer." The word "until" is a restrictive word; a word of limitation. Its office is to point out some event or time, or the happening of some event, when what precedes it shall cease to exist or have any further force or effect. (*State* v. *Perkins,* 139 Mo. 106, 40 S. W. 650; *Maginn* v. *Lancaster,* 100 Mo. App. 116, 73 S. W. 368.)

The contract of employment is sufficiently specific as to the term of employment.

It is further contended that the contract lacked mutuality, and hence cannot be enforced. The evidence, though contradicted, tended to show that the plaintiff stated his terms to the manager of the defendant company and that the manager later stated that he accepted plaintiff's proposition. There was sufficient evidence from which the jury could infer

that the parties had a mutual understanding as to the terms of the agreement, that there was a definite offer and acceptance. (*Adams* v. *Petroleum Midway Co.*, 205 Cal. 221, 270 Pac. 668; *Royer* v. *Western Silo Co.*, 99 Kan. 309, 161 Pac. 654; *Doolittle* v. *Pacific Coast Safe & Vault Works*, 79 Or. 498, 154 Pac. 753; *Weir* v. *Ryan*, 68 Mont. 336, 218 Pac. 947.)

It is urged that the court erred in instructing the jury that ██ ██ the defendant was not justified in discharging the plaintiff, if failure on the part of the plaintiff properly to perform the duties for which he was employed was due to defective machinery. This question was not directly put in issue by the pleadings. However, counsel for defendant, on cross-examination of plaintiff, asked him to explain why he did not get sufficient recovery from his operation of the refinery, and the plaintiff answered that the defendant did not have proper equipment on the towers of the refinery. Other testimony relative to defective machinery was put in evidence without objection by the defendant. Under the doctrine of implied amendment, the pleadings will on appeal be deemed to have been amended to conform to the proof. (*St. George* v. *Boucher*, 84 Mont. 158, 274 Pac. 489; *Lackman* v. *Simpson*, 46 Mont. 518, 129 Pac. 325; *Davis* v. *Claxton*, 82 Mont. 574, 268 Pac. 787.)

The plaintiff testified that he was an experienced refinery ██ man; that he made as satisfactory recovery from the operation of the plant as the condition of the machinery and equipment would permit. There is testimony in the record given by other witnesses for the plaintiff to the effect that it would take some time to get a new refinery operating efficiently. All this was denied by the defendant. The conflict in the testimony was resolved by the jury in favor of the plaintiff, and, for the purpose of this appeal, its finding establishes the fact that defendant was not justified in discharging plaintiff because of incompetency. As so often announced by this court, the verdict of a jury on conflicting evidence will not be disturbed on appeal unless the evidence clearly preponderates against it.

Appellant contends that plaintiff was not discharged at all ▮ by it, because he testified: "At the time I stated that Mr. Vanderpas called me into the office and told me he would have to let me go, he said to me that I could work for that day if I wanted to. I did not finish the day. I quit immediately because I was discharged about four or five o'clock. I never did work for the company after that time." The answer admits that plaintiff was discharged, which is conclusive so far as the question of discharge is concerned. In the light of this testimony and of the admission in the answer, the court properly refused defendant's proposed instruction No. 6, which declared that, if the plaintiff quit the employ of the defendant and that if he did not thereafter resume or offer to resume work, he could not recover.

Defendant asserts that the court erred in refusing to give ▮▮ defendant's proposed instruction No. 9. This instruction was to the effect that, if the jury found that the words "in full payment" were placed upon the check at the time it was given by defendant to plaintiff, and that delivery was made subsequent to the time plaintiff left the employ of defendant, and that the check was cashed by plaintiff and represented a payment over and above compensation for services actually rendered by plaintiff for defendant, then the plaintiff could not recover, even though it appeared that there was a contract of employment.

The plaintiff testified that the check above mentioned was given to him in payment of wages for the month of October. Defendant's manager testified that plaintiff called him up over the telephone and said he wanted a check for $65, and that he stated to plaintiff: "Well, Mike, we don't owe you anything; we paid you up in full when you quit. * * * And we talked a little and he said he had been to considerable expense about moving; so I said, 'Well, I will take it up with the boys and see if they are willing; if so, we will give you a check for your moving expenses.' * * * They said, 'Just give him a check for $65.' " Thus defendant's testimony disclosed, so far as defendant was concerned, the check was not given in

payment or satisfaction of any damage that might have accrued to plaintiff because of his being discharged. The instruction was properly refused.

In construing a receipt, the paper must be viewed in its entirety and with due regard to the conditions surrounding its execution. A receipt in full for a particular demand is not conclusive evidence of a general settlement of accounts between the parties. (48 C. J. 634.) The question whether the check here considered was in full settlement of all demands due plaintiff from defendant was properly submitted to the jury. (*Everhardy* v. *Union Finance Co.*, 115 Cal. App. 460, 1 Pac. (2d) 1024.)

The court did not err in admitting testimony, over defendant's objection, showing what wages were paid to plaintiff prior to entering the employ of defendant. It was undoubtedly admitted for the purpose of showing some of the surrounding facts and circumstances of the employment, and was admissible. (*Doolittle* v. *Pacific Coast Safe & Vault Works,* supra; *Price* v. *Western Loan & Savings Co.*, 35 Utah, 379, 100 Pac. 677, 19 Ann. Cas. 589.)

No error appearing in the record, the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

Rehearing denied March 14, 1935.