327 F.2d 592
 LANGENDORF UNITED BAKERIES, INC., a corporation, Appellant,
v.
Gordon MOORE, Appellee.
Gordon MOORE, Cross-Appellant,
v.
LANGENDORF UNITED BAKERIES, INC., a corporation, Cross-Appellee.
 No. 18652.
 United States Court of Appeals Ninth Circuit.
 January 21, 1964.
 
 Maguire, Shields, Morrison, Bailey & Kester, Walter J. Cosgrave and Robert A. Leedy, Portland, Or., for appellant.
 Koerner, Young, McColloch & Dezendorf, Wayne Hilliard and James H. Clarke, Portland, Or., for appellee.
 Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.
 MERRILL, Circuit Judge.
 
 
 1
 In this Oregon diversity action appellee, pursuant to jury verdict, secured judgment in the sum of $27,000 damages for breach of an oral contract of employment.
 
 
 2
 Upon appeal from that judgment the first question relates to the parol evidence rule. Appellant contends that if any promise to employ appellee was made, it was in consideration of the sale by appellee to appellant of appellee's wholesale bakery distribution business. The terms of the sale were embodied in a written bill of sale which recited the consideration for the transaction to be the sum of $13,000. Thus, appellant contends, the promise of employment, if any, constituted consideration in addition to that provided by the bill of sale, evidence of which is under Oregon law foreclosed by the parol evidence rule. Appellant contends that the court, for this reason, erred in failing to dismiss the action or direct a verdict in its favor.
 
 
 3
 Prior to October 17, 1960, appellee had for twenty-five years conducted a wholesale bakery distributorship in Central Oregon, buying nearly all of his products from appellant's Portland bakery. His business had expanded until 1955 to a point where he had four wholesale routes. Thereafter his business declined and appellant became alarmed lest he sell out to one of appellant's competitors.
 
 
 4
 Appellant's vice president wrote the company's Oregon district manager, Eugene Keller, with reference to the purchase of appellee's business, stating:
 
 
 5
 "Were Moore to sell to Davidson or some other competitor, eliminating our brand from the market we would have a long uphill struggle to re-establish ourselves in the area. On the other hand, upon our purchase of the route business Gordon Moore and his son who have operated in Central Oregon for 20 to 25 years and being well known and well liked throughout, will be of material help in obtaining increased business under the company's policy of maintaining a fresh market."
 
 
 6
 Keller thereupon commenced negotiations with appellee, culminating in a sale on October 17, 1960.
 
 
 7
 Appellee had done business with Keller for fifteen years. Appellee testified that he was repeatedly told by Keller that appellant's principal interest was in securing the benefit of appellee's goodwill and his services as supervisor, with the function of soliciting business and cultivating goodwill; that he was repeatedly promised by Keller, during negotiations and at the time of sale, that "You will have permanent employment with the company as long as we operate in that area."
 
 
 8
 On September 15, 1960, appellee had written Keller, confirming his understanding of the terms of sale, which included "the definite understanding and agreement that I will have a permanent position with the Company that I can fulfil considering my physical handicap and condition." When Keller transmitted this proposal to the company's vice president permanent employment was flatly rejected, and Keller was told that he could offer appellee a supervisory job but with the term of employment at the company's discretion.
 
 
 9
 With company authority Keller wrote to appellee on October 7 with reference to the proposed terms of sale, including in his recital of consideration "a supervisor's salary of between $145-$150 a week." Nothing was said of any company rejection of appellee's demand for permanent employment or of any limitation on Keller's authority to agree to such a demand.
 
 
 10
 Appellee testified that at the time of sale he asked Keller if the employment agreement should not be included in the bill of sale and was told that it would be inappropriate to include such an agreement in such an instrument.
 
 
 11
 Appellee thereafter worked as route supervisor for appellant until April 1, 1961, when he was discharged.
 
 
 12
 Oregon's application of the parol evidence rule under such circumstances is dealt with in Caldwell v. Wells (1961) 228 Or. 389, 365 P.2d 505. There the court was faced with a written contract for sale of a house and lot. Over objection based on the parol evidence rule the plaintiff was permitted to prove, as consideration for the purchase beyond that recited in writing, an oral promise to provide a suitable well. Damages allowed for breach of this oral promise were upheld on appeal. The court stated at page 508 of 365 P.2d:
 
 
 13
 "The parol evidence rule is described as a rule of integration. 9 Wigmore on Evidence (3rd ed. 1940) § 2425; McCormick on Evidence (1954), § 213. The rule closes the door to proof only as to those aspects of the bargain which the parties intended to memorialize in the writing. 3 Williston, Contracts (rev. ed. 1936) § 633. The rule is correctly stated in 1 Restatement, Contracts § 240 (1932):
 
 
 14
 "`(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and
 
 
 15
 "`(a) is made for separate consideration, or
 
 
 16
 "`(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.'
 
 
 17
 "Whether the parties intended to integrate their agreement in the writing is a question of fact in each case."
 
 
 18
 It is true that in Caldwell as the court emphasized at page 508, of 365 P.2d, the writing was an earnest money agreement as to which "the parties do not normally include all of the refinements of the transaction" while here it is a bill of sale.
 
 
 19
 However, we cannot say that reasonable minds would not differ upon the question whether parties, situated as were the parties here, might find a promise of employment to be of a subjectmatter so unrelated to that of the sale of a business as to warrant dealing with them separately. This being so, as we understand Oregon law, the question whether the parties intended to memorialize this aspect of the bargain in the bill of sale remains for the jury.
 
 
 20
 We conclude that it was not error for the district court to refuse to rule upon this issue as matter of law.
 
 
 21
 Appellant next contends that upon the record it is established as matter of law that Keller was without authority, either actual or apparent, to commit the company to the permanent employment of appellee.
 
 
 22
 We may, arguendo, concede the lack of actual authority to enter into such a contract.
 
 
 23
 Appellant directs our attention to a line of cases holding that a lifetime contract of employment is so extraordinary and far-reaching in its impact upon future management that authority to commit a principal to such an arrangement will neither be implied nor, in the absence of ratification or estoppel, be found to be apparent.[1]
 
 
 24
 As to apparent authority, such a sweeping rule has been criticized for failure to examine the crucial question whether, under the particular circumstances, it was reasonable for a third party to suppose such authority to exist. See Lee v. Jenkins Brothers (2 Cir. 1959) 268 F.2d 357, cert. denied (1959) 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183. The rule urged by appellant would constitute a conclusive presumption that such essentially factual issues could never be resolved in favor of the third party.
 
 
 25
 The extraordinary nature of the lifetime employment contract has, perhaps justifiably, led to rejection of submitting such a question to the jury in cases involving nothing more than a simple hiring of an employee. But the courts have increasingly recognized apparent authority to make such a contract where there are additional circumstances which would render such a promise not unreasonable in the light of that which is bargained for. Thus it has been thought proper to allow the jury to find apparent authority where the services were peculiarly necessary to the employing corporation and involved a substantial change of position on the part of the employee.[2]
 
 
 26
 Also, where the contract of employment is collateral to or included in the terms of a settlement of a claim by the employee, it has been regarded as not unreasonable for the employee to suppose that the agent possessing authority both to employ and to settle the claim has authority to include in the settlement a promise of permanent employment.[3]
 
 
 27
 In our view these authorities apply here. The contract of employment was not an isolated transaction. It was collateral to the sale of appellee's business as well as to his agreement not to compete for five years. Keller, as appellee knew, was in charge of all appellant's operations in Oregon and Washington, and had authority not merely to employ but also to bargain for the sale of the business; and it was not unreasonable for appellee to suppose that Keller had been vested with authority to commit appellant to the terms of sale. Appellee's anticipated services, as supervisor in a business for which as proprietor he had built up considerable goodwill, would be unusually valuable to appellant. Appellee testified that he demanded lifetime employment as a prerequisite to his concluding the transaction. Under all these circumstances the jury could find that it was not unreasonable for appellee, in the absence of knowledge to the contrary, to believe that Keller had authority to grant appellee's related employment demands.
 
 
 28
 Appellant also protests that apparent authority is lacking because appellee had knowledge or reason to know that Keller's authority was limited in this respect. We do not read the record as conclusively establishing this to be so. At the outset Keller had told appellee that he would have to submit the demand to the San Francisco office. Later, he had told appellee that he was doing the best he could. In the light of the entire course of negotiation, however, we do not feel these instances to be sufficient to take the question from the jury.
 
 
 29
 Appellant contends that the agreement for permanent employment was too indefinite to be enforced. We disagree. Under the contract as alleged there was definite consideration for appellant's promise. The reasonable intent of the parties was ascertainable. Under such circumstances destruction of the contract for uncertainty is to be avoided. F. S. Royster Guano Co. v. Hall, supra.
 
 
 30
 Appellant contends that the court erroneously instructed the jury as to the meaning of a contract for permanent employment. The court charged:
 
 
 31
 "In determining whether or not the plaintiff has proved his contentions of permanent employment, you are instructed that the words `permanent' or `permanently' which have been used with reference to the plaintiff's claimed term of employment are commonly understood to mean that so long as the defendant was engaged in the distribution of bakery products in the Bend-Prineville-Redmond-Madras area and had work for the plaintiff and had work which the plaintiff could do and desired to do, and so long as the plaintiff was able to do this work satisfactorily, the defendant would employ him."
 
 
 32
 We find no error in this instruction.
 
 
 33
 Appellant asserts that under Oregon law a contract for "permanent" employment is presumed to be terminable by will, citing Doolittle v. Pacific Coast Safe and Vault Works (1916) 79 Or. 498, 154 P. 753. However, that case recognizes that evidence of a contrary intention will rebut the presumption and that an "understanding, fairly inferable from the contract, will control." 79 Or. at 502, 154 P. at 754.[4]
 
 
 34
 Judgment is affirmed.
 
 
 35
 Our action makes it unnecessary for us to deal on the merits with appellee's protective cross-appeal from judgment of the district court dismissing his claim of fraud. The cross-appeal is dismissed as moot.
 
 
 
 Notes:
 
 
 [1]
 E. g., Maple Island Farm, Inc. v. Bitterling (8 Cir. 1954) 209 F.2d 867, 878, cert. denied (1954) 348 U.S. 882, 75 S. Ct. 123, 99 L.Ed. 694; Chesapeake & Potomac Tel. Co. of Baltimore v. Murray (1951) 198 Md. 526, 84 A.2d 870; Horvath v. Sheridan-Wyoming Coal Co. (1942) 58 Wyo. 211, 131 P.2d 315. See, generally, Annotation, 28 A.L.R.2d 929 (1953)
 
 
 [2]
 See Farmer v. Arabian American Oil Company (2 Cir. 1960) 277 F.2d 46, cert. denied (1960) 364 U.S. 824, 81 S.Ct. 60, 5 L.Ed.2d 53. See also Lee v. Jenkins, supra, 268 F.2d at 368; General Paint Corp. v. Kramer (10 Cir. 1932) 57 F.2d 698, 702, cert. denied (1932) 287 U.S. 605, 53 S.Ct. 10, 77 L.Ed. 526
 
 
 [3]
 E. g., F. S. Royster Guano Co. v. Hall (4 Cir. 1934) 68 F.2d 533; Eggers v. Armour & Co. of Delaware (8 Cir. 1942) 129 F.2d 729. See, generally, Annotation, 28 A.L.R.2d 929, 936-937 (1953)
 
 
 [4]
 Such a presumption, moreover, has been held restricted to cases where the sole consideration was the services to be rendered. Fireboard Products, Inc. v. Townsend (9 Cir. 1953) 202 F.2d 180, 182; Riefkin v. E. I. DuPont de Nemours & Co. (D.C.Cir.1923) 53 App.D.C. 311, 290 F. 286